# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
February 24, 2011

No. 09-50975

Lyle W. Cayce
Clerk

NEMESIO CASTRO, on behalf of himself and all others similarly situated,

Plaintiff-Appellant

v.

COLLECTO, INC., doing business as Collection Company of America; US ASSET MANAGEMENT, INC.,

Defendants-Appellees

Appeal from the United States District Court
for the Western District of Texas

Before DENNIS, OWEN, and SOUTHWICK, Circuit Judges.

DENNIS, Circuit Judge:

This class action arises out of an allegedly unlawful attempt to collect a debt arising from an unpaid mobile phone bill. The named plaintiff, Nemesio Castro, a debtor, sued two debt collectors (collectively "the defendants") for allegedly violating the Fair Debt Collection Practices Act ("the FDCPA"), 15 U.S.C. § 1692 *et seq.*, by sending letters that, he claimed, threatened to sue on an approximately three-year-old debt, as to which the applicable statute of limitations had elapsed. The district court certified a class consisting of all individuals with Texas addresses who, during a certain time period, received a letter like that sent to Castro, seeking to collect a cellular telephone debt

No. 09-50975

that became delinquent more than two years prior to the sending of the letter. The district court (1) granted the defendants' motion to dismiss, or alternatively, for judgment on the pleadings; and (2) denied Castro's motion for partial summary judgment. The district court reasoned that the Texas statute of limitations period of four years under § 16.004(a)(3) of the Texas Civil Practice & Remedies Code,[1] rather than the federal statute of limitations period of two years under 47 U.S.C. § 415(a) of the Federal Communications Act ("the FCA"), 47 U.S.C. § 151 *et seq.*,[2] applies to the debts in the instant case, and thus that the defendants had not threatened to sue on time-barred debts.[3] Because we agree that Texas law provides the applicable limitations period for the debts in this case, we affirm the district court's judgment.

## BACKGROUND

The named plaintiff in this class action, Nemesio Castro, a resident of Texas, received two letters regarding a debt he allegedly owed to the mobile phone company Sprint PCS, based on unpaid phone bills. The letters were sent by Collecto, Inc., doing business as Collection Company of America, Inc., on behalf of U.S. Asset Management, Inc. Castro sued both companies. The defendants are in the debt collection business: U.S. Asset buys debts, and

---

[1] Texas Civil Practice & Remedies Code § 16.004(a)(3) requires anyone who wishes to "bring suit on" several enumerated actions, including debt, to do so "not later than four years after the day the cause of action accrues."

[2] 47 U.S.C. § 415(a) states: "All actions at law by carriers for recovery of their lawful charges, or any part thereof, shall be begun, within two years from the time the cause of action accrues, and not after."

[3] The district court also reasoned that even if the federal statute of limitations applied and the debt was time-barred, the defendants were entitled to a "bona fide error" defense under the FDCPA.

2

No. 09-50975

Collecto attempts to collect them.  It is undisputed that the defendants are both debt collectors for the purposes of the FDCPA.[4]

The plaintiffs in this case received these letters more than two years, but less than four years, after their debts became past due.  The parties dispute whether actions to collect debts based on mobile phone bills are governed by a two-year statute of limitations under the FCA or a four-year statute of limitations under Texas law.  The plaintiffs argue that the two-year limitations period applies, and that the letters at issue are such that an unsophisticated consumer would interpret them as threatening a lawsuit.  Therefore, the plaintiffs argue, the defendants have violated the FDCPA's prohibition on using "any false, deceptive, or misleading representation or means in connection with the collection of any debt," 15 U.S.C. § 1692e, including "the threat to take any action that cannot legally be taken," *id.* § 1692e(5), and "the use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer," *id.* § 1692e(10).  The plaintiffs also contend that the defendants have violated the FDCPA's provision prohibiting debt collectors from "us[ing] unfair or unconscionable means to collect or attempt to collect any debt." *Id.* § 1692f.

Castro sued the defendants, alleging that they had violated the FDCPA in this manner, and moved for class certification.  The district court granted the motion and certified a class consisting of all individuals with Texas addresses who received letters from the defendants between June 16, 2007, and July 6, 2008, like those sent to Castro, seeking to collect a cellular

---

[4] The FDCPA defines "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another," with certain exceptions that do not apply here.  15 U.S.C. § 1692(a)(6).

No. 09-50975

telephone debt that became delinquent more than two years prior to the sending of the letter.  In its order granting the motion for class certification, the district court held that 47 U.S.C. § 415(a) sets a two-year limitations period for actions by "carriers"[5] to recover charges, and that § 415(a) preempts any state statute of limitations.

However, the district court was subsequently persuaded that § 415(a) does not apply to the plaintiffs' debts.  The court granted the defendants' motion to dismiss, or alternatively, for judgment on the pleadings, and held that § 415(a) did not apply for two reasons.  First, the district court noted that § 415(a) applies only to "actions at law by carriers for recovery of their *lawful charges*" (emphasis added), and concluded that "lawful charges" refers to charges that are based on "tariffs," or rates that have been filed with the Federal Communications Commission ("the FCC").  All carriers were formerly required under the FCA to file tariffs, prior to amendments passed by Congress in 1993 and 1996.  Second, the district court held that § 415(a) does not preempt statutes of limitations under state law in actions regarding matters such as billing practices and disputes, which are at issue in this case.  The district court concluded that § 415(a) applies only to actions involving federally regulated matters, including the reasonableness of rates and phone companies' entry into the market, and not to most other matters, which are

---

[5] A "carrier," also referred to as a "common carrier," is defined in the FCA as follows: "any person engaged as a common carrier for hire, in interstate or foreign communication by wire or radio or interstate or foreign radio transmission of energy, except where reference is made to common carriers not subject to this chapter; but a person engaged in radio broadcasting shall not, insofar as such person is so engaged, be deemed a common carrier." 47 U.S.C. § 153.  The parties do not dispute that Sprint and other mobile phone companies are "carriers" and that the defendants, who bought the plaintiffs' debts from mobile phone companies, must stand in those companies' shoes and be treated as "carriers" under federal law.

No. 09-50975

exclusively governed by state law.  In addition, the district court held that even if the two-year statute of limitations of § 415(a) did apply in the instant case, the defendants would be entitled to a "bona fide error" defense under the FDCPA, 15 U.S.C. § 1692k(c), because it was clearly possible for reasonable lawyers to disagree as to the applicable limitations period.  Accordingly, the district court denied the plaintiffs' motion for partial summary judgment on that issue. The plaintiffs timely appealed.

## STANDARD OF REVIEW

The district court granted the defendants' motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), or alternatively, for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c).  "For both motions, this court's standard of review is de novo, and the well-pleaded facts are viewed in the light most favorable to the plaintiff." *Turbomeca, S.A. v. Era Helicopters, LLC*, 536 F.3d 351, 354 (5th Cir. 2008).  The district court also denied the plaintiffs' motion for partial summary judgment, a decision which we also review de novo. *Becker v. Tidewater, Inc.*, 586 F.3d 358, 365 (5th Cir. 2009) ("This court reviews the district court's denial of summary judgment de novo.").

## DISCUSSION

Castro sued the defendants for violating the FDCPA, which was enacted for the following purposes:

> to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses.

15 U.S.C. § 1692(k).  The FDCPA bars debt collectors from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt," *id.* § 1692e, including "the threat to take any action

that cannot legally be taken," *id*. § 1692e(5), and "the use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer," *id*. § 1692e(10).  The FDCPA also prohibits debt collectors from "us[ing] unfair or unconscionable means to collect or attempt to collect any debt."  *Id*. § 1692f.  Accordingly, threatening to sue on time-barred debt may well constitute a violation of the FDCPA.  *See, e.g., Freyermuth v. Credit Bureau Serv., Inc.*, 248 F.3d 767, 771 (8th Cir. 2001) ("[I]n the absence of a threat of litigation or actual litigation, no violation of the FDCPA has occurred when a debt collector attempts to collect on a potentially time-barred debt that is otherwise valid."); *Jenkins v. Gen. Collection Co.*, 538 F. Supp. 2d 1165, 1172 (D. Neb. 2008) ("[I]t may be inferred from *Freyermuth* that a violation of the FDCPA *has* occurred when a debt collector attempts, through threatened or actual litigation, to collect on a time-barred debt that is otherwise valid."); *Larsen v. JBC Legal Group, P.C.*, 533 F. Supp. 2d 290, 303 (E.D.N.Y. 2008) ("Although it is permissible [under the FDCPA] for a debt collector to seek to collect on a time-barred debt voluntarily, it is prohibited from threatening litigation with respect to such a debt."); *Goins v. JBC & Assoc., P.C.*, 352 F. Supp. 2d 262, 272 (D. Conn. 2005) ("As the statute of limitations would be a complete defense to any suit . . . the threat to bring suit under such circumstances can at best be described as a 'misleading' representation, in violation of § 1692e [of the FDCPA].").  Thus, in order to proceed, the plaintiffs must show that their debts — which, upon the plaintiffs' receipt of the defendants' letters, were more than two years but less than four years old — were time-barred.

Therefore, the threshold question is whether the four-year Texas statute of limitations or the two-year federal statute of limitations applies to the plaintiffs' debts.  Texas Civil Practice & Remedies Code § 16.004(a)(3) requires anyone who wishes to "bring suit on" several enumerated actions,

including debt, to do so "not later than four years after the day the cause of action accrues." In contrast, 47 U.S.C. § 415(a) states: "All actions at law by carriers for recovery of their lawful charges, or any part thereof, shall be begun, within two years from the time the cause of action accrues, and not after."

Any statute of limitations reflects a legislature's policy decision regarding how to best balance competing interests. "The length of [a] statute of limitations is a product of a legislative weighing of competing claims of fairness — the need of plaintiffs for a reasonable amount of time within which to present their claims, and the right of defendants to be free from stale claims. Statutes of limitations also protect both the Court and the defendant from cases where the loss of evidence — by death or disappearance of witnesses, fading memories, or disappearance of documents — may frustrate the search for truth." *United States v. Land*, 213 F.3d 830, 837 (5th Cir. 2000) (quoting *Hohri v. United States*, 586 F. Supp. 769 (D.D.C. 1984)); *see also S.V. v. R.V.*, 933 S.W.2d 1, 6 (Tex. 1996) (describing "the conflicting policies in statutes of limitations" as "the benefits of precluding stale or spurious claims versus the risks of precluding meritorious claims that happen to fall outside an arbitrarily set period"). Texas has chosen four years as a limitations period for various actions, including debts, whereas the federal government has chosen two years as a limitations period for "all actions at law by carriers for recovery of their lawful charges, or any part thereof."

Accordingly, the question of which statute of limitations applies is a question of preemption: whether Congress intended for the outcome of its policy decision regarding these competing interests to replace that of a state legislature. We conclude that § 415(a) does not apply to the plaintiffs' debts, because Congress has not made clear that it intended for § 415(a) to preempt state statutes of limitations with respect to actions to collect debts like those

No. 09-50975

at issue here. "[T]he purpose of Congress is the ultimate touchstone in every pre-emption case." *Wyeth v. Levine*, 129 S. Ct. 1187, 1194 (2009) (quoting *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996)) (internal quotation marks omitted). "In all pre-emption cases, and particularly in those in which Congress has 'legislated . . . in a field which the States have traditionally occupied,' . . . we 'start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress.'" *Id.* at 1194-95 (alterations in original) (quoting *Lohr*, 518 U.S. at 485).

Starting with that assumption is appropriate in this case. Although the federal government formerly controlled telecommunications regulation nationwide, in 1993, Congress amended the FCA to permit the states to handle many aspects of regulating commercial mobile services, including billing practices and consumer protections.[6] In addition, states have traditionally governed matters regarding contracts and consumer protections, which, on a more general level, are the issues involved in this case. *See, e.g., Gen. Motors Corp. v. Abrams*, 897 F.2d 34, 41-42 (2d Cir. 1990) ("Because consumer protection law is a field traditionally regulated by the states, compelling evidence of an intention to preempt is required in this area." ). Therefore, we assume that Congress did not intend to preempt "the historic

---

[6] The 1993 amendment states in relevant part that "Notwithstanding [certain exceptions], no State or local government shall have any authority to regulate the entry of or the rates charged by any commercial mobile service or any private mobile service, except that this paragraph *shall not prohibit a State from regulating the other terms and conditions of commercial mobile services.*" Omnibus Budget Reconciliation Act of 1993, Pub. L. No. 103-66, § 6002(b)(2)(A), 107 Stat. 312, 393 (codified as amended at 47 U.S.C. § 332(c)(3)) (emphasis added). The legislative history of this subsection indicates that "terms and conditions" includes "such matters as customer billing information and practices and billing disputes and other consumer protection matters. . . . This list is intended to be illustrative only and not meant to preclude other matters generally understood to fall under 'terms and conditions.'" H.R. Rep. No. 103-111, at 261 (1993), *reprinted in* 1993 U.S.C.C.A.N. 378, 588.

8

police powers of the states," absent a showing that this was "the clear and manifest purpose of Congress." *Wyeth*, 129 S.Ct. at 1194-95.

Preemption can take multiple forms: Congress can expressly preempt state law in federal statutory language, or it can impliedly preempt state law. *Hillsborough Cnty., Fla. v. Automated Med. Labs., Inc.*, 471 U.S. 707, 713 (1985). Implied preemption can take the form of field preemption, where federal law "is sufficiently comprehensive to make reasonable the inference that Congress 'left no room' for supplementary state regulation," *id.* (quoting *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947)), or "the federal interest [in the field] is so dominant" that it "preclude[s] enforcement of state laws on the same subject," *id.* (quoting *Rice*, 331 U.S. at 230). Implied preemption can also take the form of conflict preemption: (1) where complying with both federal law and state law is impossible; or (2) where the state law "creates an unacceptable 'obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *Wyeth*, 129 S. Ct. at 1193-94 (quoting *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941)).

The plaintiffs do not contend that express preemption or field preemption applies in this case. Accordingly, we must decide whether conflict preemption applies. This depends on whether the term "lawful charges" in § 415(a) should be read to include non-tariffed charges or only tariffed charges. If "lawful charges" does include non-tariffed as well as tariffed charges, then we would agree with Castro that conflict preemption would apply, because the Texas statute of limitations would be in conflict with the balancing of interests expressed in the federal statute of limitations.

However, we conclude that Congress has not made clear that it intended for § 415(a) to preempt state statutes of limitations governing actions brought under state law to collect non-tariffed charges. Congress did not define "lawful charges" in the FCA. Nor does the legislative history of the

FCA provide clear guidance. When the FCA was enacted in 1934, it required all carriers to file their rates, also called "tariffs," with the FCC. 47 U.S.C. § 203(a). Under that regime, the term "lawful charges" was practically interchangeable with the term "tariffed charges," because the only charges that any phone company could lawfully collect were those that had been filed with the FCC. *See AT&T Co. v. Cent. Office Tel., Inc.*, 524 U.S. 214, 222 (1998) ("[Under the] filed rate doctrine. . . . 'the rate of the carrier duly filed is the only lawful charge. Deviation is not permitted upon any pretext.'" (quoting *Kan. City S. Ry. Co. v. Carl*, 227 U.S. 639, 653 (1913))).

That regime has been changed, however. Pursuant to congressional amendments to the FCA, the FCC has since released many telecommunications carriers from the requirement of filing tariffs. In 1993, Congress amended the FCA to classify commercial mobile radio service ("CMRS") providers, a group that undisputedly includes mobile phone companies such as Sprint, as carriers subject to regulation under the FCA. Omnibus Budget Reconciliation Act of 1993, Pub. L. No. 103-66, § 6002(b)(2)(A),107 Stat. 312, 393 (codified as amended at 47 U.S.C. § 332(c)(1)). However, in that same amendment, Congress also permitted the FCC to, if it made certain findings, release CMRS providers from various requirements under the FCA, including the requirement of filing tariffs. *Id*. The FCC subsequently released CMRS providers from the requirement of filing tariffs. 47 C.F.R. § 20.15. In 1996, Congress also authorized the FCC to, if it made certain findings, release other telecommunications carriers from various requirements under the FCA, including the requirement of filing tariffs. Telecommunications Act of 1996, Pub. L. No. 104-104, § 401,110 Stat. 56, 128 (codified as amended at 47 U.S.C. § 160(a)). The FCC then issued several detariffing orders indicating that long-distance providers were no longer required to file tariffs. *See In re Policy & Rules Concerning the*

*Interstate, Interexchange Marketplace, Second Order on Reconsideration*, 14
FCC Rcd. 6004 (1999); *In re Policy & Rules Concerning the Interstate,
Interexchange Marketplace, Order on Reconsideration*, 12 FCC Rcd. 15,014
(1997); *In re Policy & Rules Concerning the Interstate, Interexchange
Marketplace, Second Report & Order*, 11 FCC Rcd. 20,730 (1996).

Despite the fact that many telecommunications carriers were released
from the requirement of filing tariffs, Congress did not change the language
of § 415(a). As a result, although Congress and the FCC have drastically
changed how a charge is determined to be in accordance with the law, it is
unclear whether the meaning of the term "lawful charges" in § 415(a) has
expanded accordingly.

One plausible interpretation of "lawful charges," offered by the
plaintiffs, is that the term encompasses charges other than tariffed charges.
This interpretation relies on the ordinary meaning of the words "lawful
charges." "When terms used in a statute are undefined, we give them their
ordinary meaning." *Asgrow Seed Co. v. Winterboer*, 513 U.S. 179, 187 (1995).
The ordinary meaning of "lawful" is not limited to "pursuant only to a
federally filed tariff." Thus, the plaintiffs argue that when a consumer signs
a contract and agrees to pay a particular rate for mobile phone service, the
phone company's charges to the consumer are "lawful" charges, under the
ordinary meaning of the words, if they are consistent with the contract.

However, it is at least equally reasonable to read "lawful charges" in
§ 415(a) as a term of art meaning only tariffed charges. This reading is based
on the use of the word "lawfully" in another subsection of the FCA, § 415(g),
which defines "overcharges." Section 415(g) states: "The term 'overcharges' as
used in this section shall be deemed to mean charges for services in excess of
those applicable thereto under the schedules of charges lawfully on file with
the Commission." Section 415(g) can be fairly read as contrasting

No. 09-50975

"overcharges," which exceed filed tariffs, with "lawful charges," i.e., "charges lawfully on file with the Commission," which conform to filed tariffs. Therefore, the term "lawful charges" in § 415(a) is ambiguous as to whether it refers only to tariffed charges.

Because we conclude that the meaning of "lawful charges" is ambiguous, we therefore decline to interpret the term in such a way that conflict preemption would apply. We assume that Congress did not intend to preempt "the historic police powers of the states," absent a showing that this was "the clear and manifest purpose of Congress." *Wyeth*, 129 S. Ct. at 1194-95. Congress has not indicated a "clear and manifest purpose," *id*. at 195, for § 415(a) to preempt state statutes of limitations governing actions under state law to recover non-tariffed charges.[7] Because the Texas statute of limitations provides the limitations period in this case, the defendants were not threatening to sue on time-barred debts when they sent letters to the plaintiffs. Therefore, the district court did not err in dismissing the case. Because we affirm the district court's judgment on this ground, we do not need to address the remainder of the district court's reasoning or the parties' arguments.

The district court's judgment is AFFIRMED.

---

[7] The plaintiffs cite *Boomer v. AT&T Corp.*, 309 F.3d 404 (7th Cir. 2002), to support their argument that although Congress permitted the FCC to release various telecommunications carriers from the requirement of tariffing, it still intended for there to be nationwide uniformity with regard to statutes of limitations. *Boomer* reasoned that 47 U.S.C. §§ 201(b) and 202(a) of the FCA "demonstrate a congressional intent that individual long-distance customers throughout the United States receive uniform rates, terms and conditions of service," *id*. at 418, and concluded that state-law challenges to an arbitration clause in an AT&T customer service agreement were preempted, *id*. at 423. However, *Boomer* did not address statutes of limitations, which are at issue in this case. As explained above, Congress has specifically permitted states to regulate matters such as billing practices and disputes. *See* 47 U.S.C. § 332(c)(3); H.R. Rep. No. 103-111, at 261.