(Slip Opinion)          OCTOBER  TERM,  2016          1

Syllabus

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is
being done in connection with this case, at the time the opinion is issued.
The syllabus constitutes no part of the opinion of the Court but has been
prepared by the Reporter of Decisions for the convenience of the reader.
See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## MIDLAND FUNDING, LLC *v.* JOHNSON

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT

No. 16–348.   Argued January 17, 2017—Decided May 15, 2017

Petitioner Midland Funding filed a proof of claim in respondent John-son's Chapter 13 bankruptcy case, asserting that Johnson owed Mid-land credit-card debt and noting that the last time any charge ap-peared on Johnson's account was more than 10 years ago.   The relevant statute of limitations under Alabama law is six years.   John-son objected to the claim, and the Bankruptcy Court disallowed it. Johnson then sued Midland, claiming that its filing a proof of claim on an obviously time-barred debt was "false," "deceptive," "mislead-ing," "unconscionable," and "unfair" within the meaning of the Fair Debt Collection Practices Act, 15 U. S. C. §§1692e, 1692f.   The Dis-trict Court held that the Act did not apply and dismissed the suit. The Eleventh Circuit reversed.

*Held*: The filing of a proof of claim that is obviously time barred is not a false, deceptive, misleading, unfair, or unconscionable debt collection practice within the meaning of the Fair Debt Collection Practices Act. Pp. 2–10.

   (a) Midland's proof of claim was not "false, deceptive, or mislead-ing."   The Bankruptcy Code defines the term "claim" as a "right to payment," 11 U. S. C. §101(5)(A), and state law usually determines whether a person has such a right, see *Travelers Casualty & Surety Co. of America* v. *Pacific Gas & Elec. Co.,* 549 U. S. 443, 450–451. The relevant Alabama law provides that a creditor has the right to payment of a debt even after the limitations period has expired.

   Johnson argues that the word "claim" means "enforceable claim." But the word "enforceable" does not appear in the Code's definition, and Johnson's interpretation is difficult to square with Congress's in-tent "to adopt the broadest available definition of 'claim,'" *Johnson* v. *Home State Bank*, 501 U. S. 78, 83.   Other Code provisions are still

more difficult to square with Johnson's interpretation.  For example, §502(b)(1) says that if a "claim" is "unenforceable" it will be disallowed, not that it is not a "claim."  Other provisions make clear that the running of a limitations period constitutes an affirmative defense that a debtor is to assert after the creditor makes a "claim."  §§502, 558.  The law has long treated unenforceability of a claim (due to the expiration of the limitations period) as an affirmative defense, and there is nothing misleading or deceptive in the filing of a proof of claim that follows the Code's similar system.

Indeed, to determine whether a statement is misleading normally "requires consideration of the legal sophistication of its audience," *Bates* v. *State Bar of Ariz.*, 433 U. S. 350, 383, n. 37, which in a Chapter 13 bankruptcy includes a trustee who is likely to understand that a proof of claim is a statement by the creditor that he or she has a right to payment that is subject to disallowance, including disallowance based on untimeliness.  Pp. 2–5.

(b) Several circumstances, taken together, lead to the conclusion that Midland's proof of claim was not "unfair" or "unconscionable" within the terms of the Fair Debt Collection Practices Act.

Johnson points out that several lower courts have found or indicated that, in the context of an ordinary civil action to collect a debt, a debt collector's assertion of a claim known to be time barred is "unfair."  But those courts rested their conclusions upon their concern that a consumer might unwittingly repay a time-barred debt.  Such considerations have significantly diminished force in a Chapter 13 bankruptcy, where the consumer initiates the proceeding, see §§301, 303(a); where a knowledgeable trustee is available, see §1302(a); where procedural rules more directly guide the evaluation of claims, see Fed. Rule Bkrtcy. Proc. 3001(c)(3)(A); and where the claims resolution process is "generally a more streamlined and less unnerving prospect for a debtor than facing a collection lawsuit," *In re Gatewood*, 533 B. R. 905, 909.

Also unpersuasive is Johnson's argument that there is no legitimate reason for allowing a practice like this one that risks harm to the debtor.  The bankruptcy system treats untimeliness as an affirmative defense and normally gives the trustee the burden of investigating claims to see if one is stale.  And, at least on occasion, the assertion of even a stale claim can benefit the debtor.

More importantly, a change in the simple affirmative-defense approach, carving out an exception, would require defining the exception's boundaries.  Does it apply only where a claim's staleness appears on the face of the proof of claim?  Does it apply to other affirmative defenses or only to the running of the limitations period?  Neither the Fair Debt Collection Practices Act nor the Bankruptcy

Syllabus

Code indicates that Congress intended an ordinary civil court apply-
ing the Act to determine answers to such bankruptcy-related ques-
tions. The Act and the Code have different purposes and structural
features. The Act seeks to help consumers by preventing consumer
bankruptcies in the first place, while the Code creates and maintains
the "delicate balance of a debtor's protections and obligations," *Ko-
koszka* v. *Belford*, 417 U. S. 642, 651. Applying the Act in this con-
text would upset that "delicate balance."

   Contrary to the argument of the United States, the promulgation of
Bankruptcy Rule 9011 did not resolve this issue. Pp. 5–10.

823 F. 3d 1334, reversed.

   BREYER, J., delivered the opinion of the Court, in which ROBERTS,
C. J., and KENNEDY, THOMAS, and ALITO, JJ., joined. SOTOMAYOR, J.,
filed a dissenting opinion, in which GINSBURG and KAGAN, JJ., joined.
GORSUCH, J., took no part in the consideration or decision of the case.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports.  Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

No. 16–348

MIDLAND FUNDING, LLC, PETITIONER *v.*
ALEIDA JOHNSON

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE ELEVENTH CIRCUIT

[May 15, 2017]

JUSTICE BREYER delivered the opinion of the Court.

The Fair Debt Collection Practices Act, 91 Stat. 874, 15 U. S. C. §1692 *et seq.*, prohibits a debt collector from asserting any "false, deceptive, or misleading representation," or using any "unfair or unconscionable means" to collect, or attempt to collect, a debt, §§1692e, 1692f.  In this case, a debt collector filed a written statement in a Chapter 13 bankruptcy proceeding claiming that the debtor owed the debt collector money.  The statement made clear, however, that the 6-year statute of limitations governing collection of the claimed debt had long since run.  The question before us is whether the debt collector's filing of that statement falls within the scope of the aforementioned provisions of the Fair Debt Collection Practices Act.  We conclude that it does not.

I

In March 2014, Aleida Johnson, the respondent, filed for personal bankruptcy under Chapter 13 of the Bankruptcy Code (or Code), 11 U. S. C. §1301 *et seq*, in the Federal District Court for the Southern District of Alabama.  Two months later, Midland Funding, LLC, the petitioner, filed

a "proof of claim," a written statement asserting that Johnson owed Midland a credit-card debt of $1,879.71. The statement added that the last time any charge appeared on Johnson's account was in May 2003, more than 10 years before Johnson filed for bankruptcy. The relevant statute of limitations is six years. See Ala. Code §6–2–34 (2014). Johnson, represented by counsel, objected to the claim; Midland did not respond to the objection; and the Bankruptcy Court disallowed the claim.

Subsequently, Johnson brought this lawsuit against Midland seeking actual damages, statutory damages, attorney's fees, and costs for a violation of the Fair Debt Collection Practices Act. See 15 U. S. C. §1692k. The District Court decided that the Act did not apply and therefore dismissed the action. The Court of Appeals for the Eleventh Circuit disagreed and reversed the District Court. 823 F. 3d 1334 (2016). Midland filed a petition for certiorari, noting a division of opinion among the Courts of Appeals on the question whether the conduct at issue here is "false," "deceptive," "misleading," "unconscionable," or "unfair" within the meaning of the Act. Compare *ibid.* (finding the Fair Debt Collection Practices Act applicable) with *In re Dubois*, 834 F. 3d 522 (CA4 2016) (finding the Act inapplicable); *Owens* v. *LVNV Funding, LLC*, 832 F. 3d 726 (CA7 2016) (same); and *Nelson* v. *Midland Credit Management, Inc.*, 828 F. 3d 749 (CA8 2016) (same). We granted the petition. We now reverse the Court of Appeals.

## II

Like the majority of Courts of Appeals that have considered the matter, we conclude that Midland's filing of a proof of claim that on its face indicates that the limitations period has run does not fall within the scope of any of the five relevant words of the Fair Debt Collection Practices Act. We believe it reasonably clear that Midland's proof of

claim was not "false, deceptive, or misleading." Midland's proof of claim falls within the Bankruptcy Code's definition of the term "claim." A "claim" is a "right to payment." 11 U. S. C. §101(5)(A). State law usually determines whether a person has such a right. See *Travelers Casualty & Surety Co. of America* v. *Pacific Gas & Elec. Co.*, 549 U. S. 443, 450–451 (2007). The relevant state law is the law of Alabama. And Alabama's law, like the law of many States, provides that a creditor has the right to payment of a debt even after the limitations period has expired. See *Ex parte HealthSouth Corp.*, 974 S. 2d 288, 296 (Ala. 2007) (passage of time extinguishes remedy but the right remains); see also, *e.g., Sallaz* v. *Rice*, 161 Idaho 223, \_\_\_, 384 P. 3d 987, 992–993 (2016) (similar); *Notte* v. *Merchants Mut. Ins. Co.*, 185 N. J. 490, 499–500, 888 A. 2d 464, 469 (2006) (similar); *Potterton* v. *Ryland Group, Inc.*, 289 Md. 371, 375–376, 424 A. 2d 761, 764 (1981) (similar); *Summers* v. *Connolly*, 159 Ohio St. 396, 400–402, 112 N. E. 2d 391, 394 (1953) (similar); *DeVries* v. *Secretary of State*, 329 Mich. 68, 75, 44 N. W. 2d 872, 876 (1950) (similar); *Fleming* v. *Yeazel*, 379 Ill. 343, 344–346, 40 N. E. 2d 507, 508 (1942) (similar); *Fidelity & Cas. Co. of N. Y.* v. *Lackland*, 175 Va. 178, 185–187, 8 S. E. 2d 306, 309 (1940) (similar); *Insurance Co.* v. *Dunscomb*, 108 Tenn. 724, 728–731, 69 S. W. 345, 346 (1902) (similar); but see, *e.g.,* Miss. Code Ann. §15–1–3(1) (2012) (expiration of the limitations period extinguishes the remedy and the right); Wis. Stat. §893.05 (2011–2012) (same).

Johnson argues that the Code's word "claim" means "enforceable claim." She notes that this Court once referred to a bankruptcy "claim" as "an enforceable obligation." *Pennsylvania Dept. of Public Welfare* v. *Davenport*, 495 U. S. 552, 559 (1990). And, she concludes, Midland's "proof of claim" was false (or deceptive or misleading) because its "claim" was not enforceable. Brief for Respondent 22; Brief for United States as *Amicus Curiae* 18–

20 (making a similar argument).

But we do not find this argument convincing. The word "enforceable" does not appear in the Code's definition of "claim." See 11 U. S. C. §101(5). The Court in *Davenport* likely used the word "enforceable" descriptively, for that case involved an enforceable debt. 495 U. S., at 559. And it is difficult to square Johnson's interpretation with our later statement that "Congress intended . . . to adopt the broadest available definition of 'claim.'" *Johnson* v. *Home State Bank*, 501 U. S. 78, 83 (1991).

It is still more difficult to square Johnson's interpretation with other provisions of the Bankruptcy Code. Section 502(b)(1) of the Code, for example, says that, if a "claim" is "unenforceable," it will be disallowed. It does not say that an "unenforceable" claim is not a "claim." Similarly, §101(5)(A) says that a "claim" is a "right to payment," "whether or not such right is . . . fixed, *contingent*, . . . [or] *disputed*." If a contingency does not arise, or if a claimant loses a dispute, then the claim is unenforceable. Yet this section makes clear that the unenforceable claim is nonetheless a "right to payment," hence a "claim," as the Code uses those terms.

Johnson looks for support to other provisions that govern bankruptcy proceedings, including §502(a) of the Bankruptcy Code, which states that a claim will be allowed in the absence of an objection, and Rule 3001(f) of the Federal Rules of Bankruptcy Procedure, which states that a properly filed "proof of claim . . . shall constitute prima facie evidence of the validity and amount of the claim." But these provisions do not discuss the scope of the term "claim." Rather, they restate the Bankruptcy Code's system for determining whether a claim will be allowed. Other provisions make clear that the running of a limitations period constitutes an affirmative defense, a defense that the debtor is to assert after a creditor makes a "claim." §§502, 558. The law has long treated unen-

forceability of a claim (due to the expiration of the limitations period) as an affirmative defense. See, *e.g.,* Fed. Rule Civ. Proc. 8(c)(1); 13 Encyclopaedia of Pleading and Practice 200 (W. McKinney ed. 1898). And we see nothing misleading or deceptive in the filing of a proof of claim that, in effect, follows the Code's similar system.

Indeed, to determine whether a statement is misleading normally "requires consideration of the legal sophistication of its audience." *Bates* v. *State Bar of Ariz.*, 433 U. S. 350, 383, n. 37 (1977). The audience in Chapter 13 bankruptcy cases includes a trustee, 11 U. S. C. §1302(a), who must examine proofs of claim and, where appropriate, pose an objection, §§704(a)(5), 1302(b)(1) (including any timeliness objection, §§502(b)(1), 558). And that trustee is likely to understand that, as the Code says, a proof of claim is a statement by the creditor that he or she has a right to payment subject to disallowance (including disallowance based upon, and following, the trustee's objection for untimeliness). §§101(5)(A), 502(b), 704(a)(5), 1302(b)(1). (We do not address the appropriate standard in ordinary civil litigation.)

## III

Whether Midland's assertion of an obviously time-barred claim is "unfair" or "unconscionable" (within the terms of the Fair Debt Collection Practices Act) presents a closer question. First, Johnson points out that several lower courts have found or indicated that, in the context of an ordinary civil action to collect a debt, a debt collector's assertion of a claim known to be time barred is "unfair." See, *e.g., Phillips* v. *Asset Acceptance, LLC*, 736 F. 3d 1076, 1079 (CA7 2013) (holding as much); *Kimber* v. *Federal Financial Corp.*, 668 F. Supp. 1480, 1487 (MD Ala. 1987) (same); *Huertas* v. *Galaxy Asset Management*, 641 F. 3d 28, 32–33 (CA3 2011) (indicating as much); *Castro* v. *Collecto, Inc.*, 634 F. 3d 779, 783 (CA5 2011) (same); *Frey-*

*ermuth* v. *Credit Bureau Servs., Inc.*, 248 F. 3d 767, 771 (CA8 2001) (same).

We are not convinced, however, by this precedent. It considers a debt collector's assertion *in a civil suit* of a claim known to be stale. We assume, for argument's sake, that the precedent is correct in that context (a matter this Court itself has not decided and does not now decide). But the context of a civil suit differs significantly from the present context, that of a Chapter 13 bankruptcy proceeding. The lower courts rested their conclusions upon their concern that a consumer might unwittingly repay a time-barred debt. Thus the Seventh Circuit pointed out that "'few unsophisticated consumers would be aware that a statute of limitations could be used to defend against lawsuits based on stale debts.'" *Phillips*, *supra,* at 1079 (quoting *Kimber*, *supra,* at 1487). The "'passage of time,'" the Circuit wrote, "'dulls the consumer's memory of the circumstances and validity of the debt'" and the consumer may no longer have "'personal records.'" 736 F. 3d, at 1079 (quoting *Kimber*, *supra,* at 1487). Moreover, a consumer might pay a stale debt simply to avoid the cost and embarrassment of suit. 736 F. 3d, at 1079.

These considerations have significantly diminished force in the context of a Chapter 13 bankruptcy. The consumer initiates such a proceeding, see 11 U. S. C. §§301, 303(a), and consequently the consumer is not likely to pay a stale claim just to avoid going to court. A knowledgeable trustee is available. See §1302(a). Procedural bankruptcy rules more directly guide the evaluation of claims. See Fed. Rule Bkrtcy. Proc. 3001(c)(3)(A); Advisory Committee's Notes on Rule 3001–2011 Amdt., 11 U. S. C. App., p. 678. And, as the Eighth Circuit Bankruptcy Appellate Panel put it, the claims resolution process is "generally a more streamlined and less unnerving prospect for a debtor than facing a collection lawsuit." *In re Gatewood*, 533 B. R. 905, 909 (2015); see also, *e.g.,* 11 U. S. C. §502 (out-

lining generally the claims resolution process). These features of a Chapter 13 bankruptcy proceeding make it considerably more likely that an effort to collect upon a stale claim in bankruptcy will be met with resistance, objection, and disallowance.

Second, Johnson argues that the practice at least risks harm to the debtor and that there is not "a single legitimate reason" for allowing this kind of behavior. Brief for Respondent 32. Would it not be obviously "unfair," she asks, for a debt collector to adopt a practice of buying up stale claims cheaply and asserting them in bankruptcy knowing they are stale and hoping for careless trustees? The United States, supporting Johnson, adds its view that the Federal Rules of Bankruptcy Procedure make the practice open to sanction, and argues that sanctionable conduct is unfair conduct. Brief for United States as *Amicus Curiae* 20. See Fed. Rule Bkrtcy. Proc. 9011(b)(2) (sanction possible if party violates the Rule that by "presenting to the [bankruptcy] court" any "paper," a "party is certifying that to the best of" his or her "knowledge, . . . the claims . . . therein are warranted by existing law").

We are ultimately not persuaded by these arguments. The bankruptcy system, as we have already noted, treats untimeliness as an affirmative defense. The trustee normally bears the burden of investigating claims and pointing out that a claim is stale. See *supra,* at 4–5. Moreover, protections available in a Chapter 13 bankruptcy proceeding minimize the risk to the debtor. See *supra,* at 6. And, at least on occasion, the assertion of even a stale claim can benefit a debtor. Its filing and disallowance "discharge[s]" the debt. 11 U. S. C. §1328(a). And that discharge means that the debt (even if unenforceable) will not remain on a credit report potentially affecting an individual's ability to borrow money, buy a home, and perhaps secure employment. See 15 U. S. C. §1681c(a)(4) (debt may remain on a credit report for seven years); cf. Ala. Code §6–2–34 (6-

year statute of limitations); Md. Cts. & Jud. Proc. Code
Ann. §5–101 (2013) (3-year statute of limitations); cf. 16
CFR pt. 600, App. §607, ¶6 (1991) (a credit report may
include discharged debt only if "the debt [is reported] as
having a zero balance due to reflect the fact that the con-
sumer is no longer liable for the discharged debt"); FTC,
40 Years of Experience with the Fair Credit Reporting Act:
An FTC Staff Report with Summary of Interpretations 66
(2011) (similar).

   More importantly, a change in the simple affirmative-
defense approach, carving out an exception, itself would
require defining the boundaries of the exception.  Does it
apply only where (as Johnson alleged in the complaint) a
claim's staleness appears "on [the] face" of the proof of
claim?  Does it apply to other affirmative defenses or only
to the running of a limitations period?

   At the same time, we do not find in either the Fair Debt
Collection Practices Act or the Bankruptcy Code good
reason to believe that Congress intended an ordinary civil
court applying the Act to determine answers to these
bankruptcy-related questions.  The Act and the Code have
different purposes and structural features.  The Act seeks
to help consumers, not necessarily by closing what John-
son and the United States characterize as a loophole in
the Bankruptcy Code, but by preventing consumer bank-
ruptcies in the first place.  See, *e.g.,* 15 U. S. C. §1692(a)
(recognizing the "abundant evidence of the use of abusive,
deceptive, and unfair debt collection practices [which]
contribute to the number of personal bankruptcies"); see
also §1692(b) ("Existing laws and procedures . . . are inad-
equate to protect consumers"); §1692(e) (statute seeks to
"eliminate abusive debt collection practices").  The Bank-
ruptcy Code, by way of contrast, creates and maintains
what we have called the "delicate balance of a debtor's
protections and obligations."  *Kokoszka* v. *Belford,* 417
U. S. 642, 651 (1974).

To find the Fair Debt Collection Practices Act applicable here would upset that "delicate balance." From a substantive perspective it would authorize a new significant bankruptcy-related remedy in the absence of language in the Code providing for it. Administratively, it would permit postbankruptcy litigation in an ordinary civil court concerning a creditor's state of mind—a matter often hard to determine. See 15 U. S. C. §1692k(c) (safe harbor for any debt collector who "shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error"). Procedurally, it would require creditors (who assert a claim) to investigate the merits of an affirmative defense (typically the debtor's job to assert and prove) lest the creditor later be found to have known the claim was untimely. The upshot could well be added complexity, changes in settlement incentives, and a shift from the debtor to the creditor the obligation to investigate the staleness of a claim.

Unlike the United States, we do not believe that the Advisory Committee on Rules of Bankruptcy Procedure settled the issue when it promulgated Bankruptcy Rule 9011. The Committee, in considering amendments to the Federal Rules of Bankruptcy Procedure in 2009, specifically rejected a proposal that would have required a creditor to certify that there is no valid statute of limitations defense. See Agenda Book for Meeting 86–87 (Mar. 26–27, 2009). It did so in part because the working group did not want to impose an affirmative obligation on a creditor to make a prefiling investigation of a potential time-bar defense. *Ibid.* In rejecting that proposal, the Committee did note that Rule 9011 imposes a general "obligation on a claimant to undertake an inquiry reasonable under the circumstances to determine . . . that a claim is warranted by existing law and that factual contentions have evidentiary

support," and to certify as much on the proof of claim. *Id.*, at 87. The Committee also acknowledged, however, that this requirement would "not addres[s] the statute of limitation issue," but would only ensure "the accuracy of the information provided." *Ibid.*

We recognize that one Bankruptcy Court has held that filing a time-barred claim without a prefiling investigation of a potential time-bar defense merits sanctions under Rule 9011. *In re Sekema*, 523 B. R. 651, 654 (Bkrtcy. Ct. ND Ind. 2015). But others have held to the contrary. See, *e.g., In re Freeman*, 540 B. R. 129, 143–144 (Bkrtcy. Ct. ED Pa. 2015); *In re Jenkins*, 538 B. R. 129, 134–136 (Bkrcty. Ct. ND Ala. 2015); *In re Keeler*, 440 B. R. 354, 366–369 (Bkrtcy. Ct. ED Pa. 2009); see also *In re Andrews*, 394 B. R. 384, 387–388 (Bkrtcy. Ct. EDNC 2008) (recognizing that "[m]any courts have . . . found that sanctions [under Rule 9011] were not warranted for filing stale claims").

These circumstances, taken together, convince us that we cannot find the practice at issue here "unfair" or "unconscionable" within the terms of the Fair Debt Collection Practices Act.

IV

For these reasons, we conclude that filing (in a Chapter 13 bankruptcy proceeding) a proof of claim that is obviously time barred is not a false, deceptive, misleading, unfair, or unconscionable debt collection practice within the meaning of the Fair Debt Collection Practices Act. The judgment of the Eleventh Circuit is reversed.

*It is so ordered.*

JUSTICE GORSUCH took no part in the consideration or decision of this case.

# SUPREME COURT OF THE UNITED STATES

_____

No. 16–348

_____

## MIDLAND FUNDING, LLC, PETITIONER *v.* ALEIDA JOHNSON

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT

[May 15, 2017]

JUSTICE SOTOMAYOR, with whom JUSTICE GINSBURG and JUSTICE KAGAN join, dissenting.

The Fair Debt Collection Practices Act (FDCPA or Act) prohibits professional debt collectors from using "false, deceptive, or misleading representation[s] or means in connection with the collection of any debt" and from "us[ing] unfair or unconscionable means to collect" a debt. 15 U. S. C. §§1692e, 1692f. The Court today wrongfully holds that a debt collector that knowingly attempts to collect a time-barred debt in bankruptcy proceedings has violated neither of these prohibitions.

Professional debt collectors have built a business out of buying stale debt, filing claims in bankruptcy proceedings to collect it, and hoping that no one notices that the debt is too old to be enforced by the courts. This practice is both "unfair" and "unconscionable." I respectfully dissent from the Court's conclusion to the contrary.[1]

## I

Americans owe trillions of dollars in consumer debt to creditors—credit card companies, schools, and car dealers,

_____

[1] Because I believe the practice at issue here is "unfair" and "unconscionable," and thus violates 15 U. S. C. §1692f, I do not address the Court's conclusion that the practice is not "false, deceptive, or misleading" in violation of §1692e.

among others. See Fed. Reserve Bank of N. Y., Quarterly Report on Household Debt and Credit 3 (2017). Most people will repay their debts, but some cannot do so. The debts they do not pay are increasingly likely to end up in the hands of professional debt collectors—companies whose business it is to collect debts that are owed to other companies. See Consumer Financial Protection Bur., Fair Debt Collection Practices Act: Annual Report 2016, p. 8 (CFPB Report). Debt collection is a lucrative and growing industry. Last year, the Nation's 6,000 debt collection agencies earned over $13 billion in revenue. *Ibid.*

Although many debt collectors are hired by creditors to work on a third-party basis, more and more collectors also operate as "debt buyers"—purchasing debts from creditors outright and attempting to collect what they can, with the profits going to their own accounts.[2] See FTC, The Structure and Practices of the Debt Buying Industry 11–12 (2013) (FTC Report); CFPB Report 10. Debt buyers now hold hundreds of billions of dollars in consumer debt; indeed, a study conducted by the Federal Trade Commission (FTC) in 2009 found that nine of the leading debt buyers had purchased over $140 billion in debt just in the previous three years. FTC Report, at i–ii, T–3 (Table 3).

Because creditors themselves have given up trying to collect the debts they sell to debt buyers, they sell those debts for pennies on the dollar. *Id.,* at 23. The older the debt, the greater the discount: While debt buyers pay close to eight cents per dollar for debts under three years old, they pay as little as two cents per dollar for debts greater than six years old, and "effectively nothing" for debts greater than 15 years old. *Id.,* at 23–24. These prices

---

[2] A case pending before this Court, *Henson* v. *Santander Consumer USA Inc.*, No. 16–349, asks whether a certain kind of debt buyer is a "debt collector" under the FDCPA. Midland does not dispute that it is a debt collector under the Act.

reflect the basic fact that older debts are harder to collect. As time passes, consumers move or forget that they owe the debts; creditors have more trouble documenting the debts and proving their validity; and debts begin to fall within state statutes of limitations—time limits that "operate to bar a plaintiff's suit" once passed. *CTS Corp.* v. *Waldburger*, 573 U. S. ___, ___ (2014) (slip op., at 5). Because a creditor (or a debt collector) cannot enforce a time-barred debt in court, the debt is inherently worth very little indeed.

But statutes of limitations have not deterred debt buyers. For years, they have filed suit in state courts—often in small-claims courts, where formal rules of evidence do not apply—to collect even debts too old to be enforced by those courts.[3]  See Holland, The One Hundred Billion Dollar Problem in Small-Claims Court, 6 J. Bus. & Tech. L. 259, 261 (2011).  Importantly, the debt buyers' only hope in these cases is that consumers will fail either to invoke the statute of limitations or to respond at all: In most States the statute of limitations is an affirmative defense, meaning that a consumer must appear in court and raise it in order to dismiss the suit.  See *ante,* at 4–5 (majority opinion).  But consumers do fail to defend themselves in court—in fact, according to the FTC, over 90% fail to appear at all.  FTC Report 45.  The result is that debt buyers have won "billions of dollars in default judgments" simply by filing suit and betting that consumers will lack the resources to respond.  Holland, *supra,* at 263.

The FDCPA's prohibitions on "misleading" and "unfair" conduct have largely beaten back this particular practice. Every court to have considered the question has held that

—————

[3] Petitioner's parent alone filed 245,000 lawsuits in 2009.  See Silver-Greenberg, Boom in Debt Buying Fuels Another Boom—in Lawsuits, Wall Street Journal, Nov. 29, 2010, pp. A1, A16.  Petitioner itself filed 110 lawsuits on just one date in a single state court. *Id.,* at A1.

a debt collector that knowingly files suit in court to collect a time-barred debt violates the FDCPA. See *Phillips* v. *Asset Acceptance, LLC*, 736 F. 3d 1076, 1079 (CA7 2013); *Kimber* v. *Federal Financial Corp.*, 668 F. Supp. 1480, 1487 (MD Ala. 1987); see also *ante,* at 5–6 (majority opinion) (citing other cases). In 2015, petitioner and its parent company entered into a consent decree with the Government prohibiting them from filing suit to collect time-barred debts and ordering them to pay $34 million in restitution. See Consent Order in *In re Encore Capital Group, Inc.*, No. 2015–CFPB–0022 (Sept. 9, 2015), pp. 38, 46. And the leading trade association has now adopted a resolution barring the practice. See Brief for DBA International, Inc., as *Amicus Curiae* 2–3.

Stymied in state courts, the debt buyers have now turned to a new forum: bankruptcy courts. The same debt buyers that for years filed thousands of lawsuits in state courts across the country have begun to do the same thing in bankruptcy courts—specifically, in cases governed by Chapter 13 of the Bankruptcy Code, which allows consumers earning regular incomes to restructure their debts and repay as many as they can over a period of several years. See 8 Collier on Bankruptcy ¶1300.01 (A. Resnick & H. Sommer eds., 16th ed. 2016). As in ordinary civil cases, a debtor in a Chapter 13 bankruptcy proceeding is entitled to have dismissed any claim filed against his estate that is barred by a statute of limitations. See 11 U. S. C. §558. As in ordinary civil cases, the statute of limitations is an affirmative defense, one that must be raised by either the debtor or the trustee of his estate before it is honored. §§502, 558. And so—just as in ordinary civil cases—debt collectors may file claims in bankruptcy proceedings for stale debts and hope that no one notices that they are too old to be enforced.

And that is exactly what the debt buyers have done. As a wide variety of courts and commentators have observed,

debt buyers have "deluge[d]" the bankruptcy courts with claims "on debts deemed unenforceable under state stat- utes of limitations." *Crawford* v. *LVNV Funding, LLC*, 758 F. 3d 1254, 1256 (CA11 2014); see also *In re Jenkins*, 456 B. R. 236, 239, n. 2 (Bkrtcy. Ct. EDNC 2011) (noting a "plague of stale claims"); Brief for National Association of Consumer Bankruptcy Attorneys et al. as *Amici Curiae* 9 (noting study describing "hundreds of thousands of proofs of claim asserting hundreds of millions of dollars of con- sumer indebtedness, all in a single year"). This practice has become so widespread that the Government sued one debt buyer last year "to address [its] systemic abuse of the bankruptcy process"—including a "business model" of "knowingly and strategically" filing thousands of claims for time-barred debt. Complaint in *In re Freeman-Clay* v. *Resurgent Capital Servs., L. P.*, No. 14–41871 (Bkrtcy. Ct. WD Mo.), ¶¶1, 35 (*Resurgent* Complaint). This practice, the Government explained, "manipulates the bankruptcy process by systematically shifting the burden" to trustees and debtors to object even to "frivolous claims"—especially given that filing an objection is costly, time consuming, and easy to overlook. *Id.,* at ¶¶35, 43–44.

## II

The FDCPA prohibits professional debt collectors from engaging in "unfair" and "unconscionable" practices. 15 U. S. C. §1692f.[4] Filing a claim in bankruptcy court for

---

[4] This Court has not had occasion to construe the terms "unfair" and "unconscionable" in §1692f. The FDCPA's legislative history suggests that Congress intended these terms as a backstop that would enable "courts, where appropriate, to proscribe other improper conduct . . . not specifically addressed" by the statute. S. Rep. No. 95–382, p. 4 (1977). Courts have construed these terms, consistent with other federal and state statutes that employ them, to borrow from equitable and common- law traditions. See, *e.g., LeBlanc* v. *Unifund CCR Partners*, 601 F. 3d 1185, 1200–1201 (CA11 2010) (*per curiam*); *Beler* v. *Blatt, Hasenmiller, Leibsker & Moore, LLC*, 480 F. 3d 470, 473–474 (CA7 2007).

debt that a collector knows to be time barred—like filing a lawsuit in a court to collect such a debt—is just such a practice.

### A

Begin where the debt collectors themselves began: with their practice of filing suit in ordinary civil courts to collect debts that they know are time barred. Every court to have considered this practice holds that it violates the FDCPA. There is no sound reason to depart from this conclusion.

Statutes of limitations "are not simply technicalities." *Board of Regents of Univ. of State of N. Y.* v. *Tomanio*, 446 U. S. 478, 487 (1980). They reflect strong public-policy determinations that "it is unjust to fail to put [an] adversary on notice to defend within a specified period of time." *United States* v. *Kubrick*, 444 U. S. 111, 117 (1979). And they "promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared." *Railroad Telegraphers* v. *Railway Express Agency, Inc.*, 321 U. S. 342, 348–349 (1944). Such concerns carry particular weight in the context of small-dollar consumer debt collection. As one thoughtful opinion explains:

> "Because few unsophisticated consumers would be aware that a statute of limitations could be used to defend against lawsuits based on stale debts, such consumers would unwittingly acquiesce to such lawsuits. And, even if the consumer realizes that she can use time as a defense, she will more than likely still give in rather than fight the lawsuit because she must still expend energy and resources and subject herself to the embarrassment of going into court to present the defense . . . ." *Kimber*, 668 F. Supp., at 1487.

Debt buyers' efforts to pursue stale debt in ordinary civil

litigation may also entrap debtors into forfeiting their time defenses altogether. When a debt collector sues or threatens to sue to collect a debt, many consumers respond by offering a small partial payment to forestall suit. In many States, a consumer who makes an offer like this has—unbeknownst to him—forever given up his ability to claim the debt is unenforceable. That is because in most States a consumer's partial payment on a time-barred debt—or his promise to resume payments on such a debt—will restart the statute of limitations. FTC Report 47; see, *e.g., Young* v. *Sorenson*, 47 Cal. App. 3d 911, 914, 121 Cal. Rptr. 236, 237 (1975) ("'The theory on which this is based is that the payment is an acknowledgement on the existence of the indebtedness which raises an implied promise to continue the obligation and to pay the balance'"). Debt collectors' efforts to entrap consumers in this way have no place in honest business practice.

B

The same dynamics are present in bankruptcy proceedings. A proof of claim filed in bankruptcy court represents the debt collector's belief that it is entitled to payment, even though the debt should not be enforced as a matter of public policy. The debtor's claim will be allowed, and will be incorporated in a debtor's payment plan, unless the debtor or his trustee objects. But such objections require ordinary and unsophisticated people (and their overworked trustees) to be on guard not only against mistaken claims but also against claims that debt collectors know will fail under law if an objection is raised. Debt collectors do not file these claims in good faith; they file them hoping and expecting that the bankruptcy system will fail. Such a practice is "unfair" and "unconscionable" in violation of the FDCPA.

The Court disagrees. But it does so on narrow grounds. To begin with, the Court does not hold that the Bankruptcy

Code altogether displaces the FDCPA, leaving it with no role to play in bankruptcy proceedings. Such a conclusion would be wrong. Although the Code and the FDCPA "have different purposes and structural features," *ante,* at 8, the Court has held that Congress, in passing the FDCPA's predecessor, did so on the understanding that "the provisions and the purposes" of the two statutes were intended to "coexist." *Kokoszka* v. *Belford,* 417 U. S. 642, 650 (1974). Although petitioner suggests that the FDCPA is best read "to have no application to [a] debt collector's conduct" in a bankruptcy proceeding, Brief for Petitioner 41, the majority declines its invitation to adopt such a sweeping rule.[5]

Nor does the majority take a position on whether a debt collector violates the FDCPA by filing suit in an ordinary court to collect a debt it knows is time barred. *Ante,* at 6. Instead, the majority concludes, even assuming that such a practice would violate the FDCPA, a debt collector does

———————

[5] The majority does lean heavily on its fear that, were we to conclude that the FDCPA bars the practice at issue, we would be licensing "postbankruptcy litigation in an ordinary civil court" concerning matters best left to bankruptcy courts. *Ante,* at 9. But to do so would not, as the majority suggests, "upset [the] 'delicate balance'" struck by the Code. *Ibid.* (quoting *Kokoszka* v. *Belford,* 417 U. S., at 651). For one, nothing requires a debtor to engage in satellite litigation in order to sue a debt collector under the FDCPA; a debtor can easily file an adversary proceeding asserting an FDCPA claim with the bankruptcy court itself, and in many cases will be better served by doing so. See, *e.g., Simon* v. *FIA Card Servs., N. A.,* 732 F. 3d 259, 263 (CA3 2013). Nor is there any risk that finding the FDCPA applicable here will authorize bankruptcy courts (or, for that matter, civil courts) to engage in novel and unfettered inquiries into "a creditor's state of mind." *Ante,* at 9. Both Fed. Rule Civ. Proc. 11 and its bankruptcy counterpart, Fed. Rule Bkrtcy. Proc. 9011, authorize a court to impose sanctions on parties who willfully file meritless claims (a category that includes the debt buyers here, see *In re Sekema,* 523 B. R. 651, 654–655 (Bkrtcy. Ct. ND Ind. 2015)). So there is nothing new about the inquiry that courts would be required to undertake; it is no different than analyses they conduct every day.

not violate the Act by doing the same thing in bankruptcy proceedings. Bankruptcy, the majority argues, is different. True enough. But none of the distinctions that the majority identifies bears the weight placed on it.

First, the majority contends, structural features of the bankruptcy process reduce the risk that a stale debt will go unnoticed and thus be allowed. *Ante,* at 6–7. But there is virtually no evidence that the majority's theory holds true in practice. The majority relies heavily on the presence of a bankruptcy trustee, appointed to act on the debtor's behalf and empowered to (among other things) object to claims that he believes lack merit. See 11 U. S. C. §§704(a)(5), 1302(b). In the majority's view, the trustee's gatekeeping role makes it "considerably more likely that an effort to collect upon a stale claim in bankruptcy will be met with resistance, objection, and disallowance." *Ante,* at 7. The problem with the majority's *ipse dixit* is that everyone with actual experience in the matter insists that it is false. The Government, which oversees bankruptcy trustees, tells us that trustees "cannot realistically be expected to identify every time-barred . . . claim filed in every bankruptcy." Brief for United States as *Amicus Curiae* 25–26; see also *Resurgent* Complaint ¶43 ("Filing objections to all of [one collector]'s unenforceable claims would clog the docket of this Court and other courts with objections to frivolous claims"). The trustees themselves (appearing here as *amici curiae*) agree, describing the practice as "wasteful" and "exploit[ative]." Brief for National Association of Chapter Thirteen Trustees as *Amicus Curiae* 12. And courts across the country recognize that Chapter 13 trustees are struggling under a "deluge" of stale debt. *Crawford,* 758 F. 3d, at 1256.

Second, the other features of the bankruptcy process that the majority believes will serve as a backstop against frivolous claims are even less likely to do so in practice. The majority implies that a person who files for bankruptcy

is more sophisticated than the average consumer debtor because the initiation of bankruptcy is a choice made by a debtor. *Ante,* at 6. But a person who has filed for bankruptcy will rarely be in such a superior position; he has, after all, just declared that he is unable to meet his financial obligations and in need of the assistance of the courts. It is odd to speculate that such a person is better situated to monitor court filings and lodge objections than an ordinary consumer. The majority also suggests that the rules of bankruptcy help "guide the evaluation of claims." *Ibid.* But the rules of bankruptcy in fact facilitate the *allowance* of claims: Claims are automatically allowed and made part of a plan unless an objection is made. See 11 U. S. C. §502(a). A debtor is arguably more vulnerable in bankruptcy—not less—to the oversights that the debt buyers know will occur.

Finally, the majority suggests, in some cases a consumer will actually *benefit* if a claim for an untimely debt is filed. *Ante,* at 7–8. If such a claim is filed but disallowed, the majority explains, the debt will eventually be discharged, and the creditor will be barred from collecting it. See §1328(a). Here, too, practice refutes the majority's rosy portrait of these proceedings. A debtor whose trustee does not spot and object to a stale debt will find no comfort in the knowledge that *other* consumers with more attentive trustees may have their debts disallowed and discharged. Moreover, given the high rate at which debtors are unable to fully pay off their debts in Chapter 13 proceedings, see Porter, The Pretend Solution: An Empirical Study of Bankruptcy Outcomes, 90 Texas L. Rev. 103, 111–112 (2011), most debtors who fail to object to a stale claim will end up worse off than had they never entered bankruptcy at all: They will make payments on the stale debts, thereby resuscitating them, see *supra*, at 6–7, and may thus walk out of bankruptcy court owing more to their creditors than they did when they entered it. There is no benefit to

anyone in such a proceeding—except the debt collectors.

\*    \*    \*

It does not take a sophisticated attorney to understand why the practice I have described in this opinion is unfair. It takes only the common sense to conclude that one should not be able to profit on the inadvertent inattention of others. It is said that the law should not be a trap for the unwary. Today's decision sets just such a trap.

I take comfort only in the knowledge that the Court's decision today need not be the last word on the matter. If Congress wants to amend the FDCPA to make explicit what in my view is already implicit in the law, it need only say so.

I respectfully dissent.