This Court has jurisdiction pursuant to 28 U.S.C. § 1334 and General Order No. 2012-7 entered in this district pursuant to 28 U.S.C. § 157(a). Venue in this Court is proper pursuant to 28 U.S.C. §§ 1391(b), 1408, and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B). The following constitutes the Court's findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052.
I. PROCEDURAL AND FACTUAL BACKGROUND
A. The 2006 Foreclosure Action and the 2007 Chapter 13 Case
On August 7, 2002, the Debtors executed the Note and Mortgage.[3] (Jt. Stips. ¶ 1.)
*187 The Debtors defaulted on their monthly payments on the Note. (Id. ¶ 2.) After the Debtors defaulted on the Note, BONY accelerated the Note and initiated a foreclosure action on December 20, 2006 ("2006 Foreclosure Action") in the Trumbull County, Ohio Court of Common Pleas ("State Court"). (Id. )
The current bankruptcy case is the second chapter 13 case filed by the Debtors. They previously filed a chapter 13 bankruptcy petition on April 30, 2007, which was denominated Case No. 07-40993 ("2007 Case").
The chapter 13 plan in the 2007 Case (2007 Case, Doc. 2) provided for the Debtors to make regular payments directly to Homecomings Financial Network on the Note and Mortgage on their Residence.[4] BONY filed a proof of claim in the 2007 Case, which was denominated Claim No. 6-1 in the total secured amount of $80,241.54 with $8,709.06 listed as the pre-petition arrearage. (Id. ¶ 6.) Claim No. 6-1 was based on the Note and Mortgage. Notices relating to Claim No. 6-1 were to be sent to Homecomings Financial, LLC.
The Debtors' plan in the 2007 Case was confirmed on January 7, 2008 (2007 Case, Doc. 29). On August 13, 2012, the Chapter 13 Trustee filed Notice of Final Cure Payment on Residential Mortgage regarding Claim No. 6-1 (2007 Case, Doc. 72). The Debtors received a discharge in the 2007 Case on September 12, 2012 (2007 Case, Doc. 75).
Approximately two months after the Debtors received their discharge in the 2007 Case, BONY filed Motion to Vacate Bankruptcy Stay in the 2006 Foreclosure Action to "reinstate this case to the active docket and grant leave to continue with the prosecution of this case." (Jt. Stips. ¶ 11; Mot. for S.J., Ex. B at 1.) The State Court granted BONY's motion and reinstated the 2006 Foreclosure Action. (Jt. Stips. ¶ 12; Mot. for S.J., Ex. C.) During the pendency of the Debtors' 2007 Case, on June 25, 2007, the State Court issued a judgment of foreclosure ("Foreclosure Judgment") in the 2006 Foreclosure Action.[5] (Jt. Stips. ¶ 7.) On December 21, 2012, BONY requested the State Court to issue an order of sale upon decree of foreclosure.[6] (Jt. Stips. ¶ 13; Mot. for S.J., Ex. D.) On February 4, 2013, the State Court vacated the Praecipe For Order of Sale. (Jt. Stips. ¶ 14.)
On May 15, 2013, BONY moved to vacate the Foreclosure Judgment and dismiss the 2006 Foreclosure Action. (Mot. for S.J., Ex. E.) Five days later, the 2006 Foreclosure Action was dismissed without prejudice. (Jt. Stips. ¶ 17.)
B. The 2015 Foreclosure Action and the 2017 Chapter 13 Case
On April 9, 2015, BONY filed a foreclosure action in the State Court ("2015 Foreclosure *188 Action"), which sought to collect on the Note an unpaid principal balance of $67,508.91, but which reflected that the Debtors did not have any personal liability on the Note due to their bankruptcy discharge in the 2007 Case. (Jt. Stips. ¶ 21.) On December 15, 2015, the Debtors made their third and last payment in the amount of $614.06 to BONY on a trial modification; the parties did not enter into a permanent loan modification. (Id. ¶ 22.)
The Debtors filed a voluntary petition pursuant to chapter 13 of Title 11 on March 15, 2017 ("Petition Date"), which commenced the case that is currently before the Court. (Id. ¶ 23.) On July 26, 2017, BONY filed Claim 14 based on the Note and Mortgage, showing a principal balance of $67,207.03. (Id. ¶ 24.) Specialized Loan Servicing LLC ("SLS") is listed on Claim 14 as the party to which notices and payments should be sent. Claim 14 was filed as a secured claim and lists $46,062.47 as the amount necessary to cure any default as of the Petition Date.
On September 15, 2017, the Debtors filed Objection to Claim Filed by The Bank of New York Mellon Trust Company, N.A. ("Claim Objection") (Doc. 40).[7] Among the reasons the Debtors seek disallowance of Claim 14 is that Claim 14 is barred by the applicable statute of limitations, which is the only issue before this Court on summary judgment.
On February 13, 2018, the Debtors, SLS, and BONY filed Joint Motion to Set an Evidentiary Hearing for Debtors [sic] Objection to Claim Number 14-1 ("Joint Motion") (Doc. 53), in which the parties requested the Court to set (i) a discovery deadline of March 19, 2018; and (ii) a date for an evidentiary hearing. The Court held hearings on the Claim Objection and Joint Motion on February 15, 2018, at which the Court granted the oral motion of counsel for the Debtors for leave to file a motion for summary judgment on the statute of limitations issue. Following those hearings, the court entered Amended Order Setting (i) Discovery Completion Date; and (ii) Evidentiary Hearing (Doc. 58), which set March 26, 2018 and April 16, 2018, respectively, as those dates. The Court also entered Order Setting Briefing Schedule (Doc. 59) regarding the Debtors' proposed motion for summary judgment. In accordance with that briefing schedule, the parties' respective motion and briefs are currently before the Court.
II. STANDARD FOR REVIEW
Federal Rule of Civil Procedure 56(a), made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 9014, states, in pertinent part:
The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.
FED. R. CIV. P. 56(a) (2018). Material facts are those "that might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc. , 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A genuine issue of material fact exists "if a reasonable person could return a verdict for the non-moving party." Jacob v. Twp. of W. Bloomfield , 531 F.3d 385, 389 (6th Cir. 2008) (citing Anderson , 477 U.S. at 248, 106 S.Ct. 2505 ).
*189 "The moving party bears the burden of proving the absence of genuine issues of material fact and its entitlement to judgment as a matter of law." Longaberger Co. v. Kolt , 586 F.3d 459, 465 (6th Cir. 2009) (citing Celotex Corp. v. Catrett , 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) ). The burden then shifts to the nonmoving party to present specific facts demonstrating the existence of a genuine dispute. Pucci v. Nineteenth Dist. Court , 628 F.3d 752, 759-60 (6th Cir. 2010) (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp. , 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) ). In evaluating a motion for summary judgment, "the court must view the factual evidence and draw all reasonable inferences in favor of the nonmoving party." Banks v. Wolfe County Bd. of Educ. , 330 F.3d 888, 892 (6th Cir. 2003) (citing Matsushita , 475 U.S. at 587, 106 S.Ct. 1348 ).
III. ARGUMENTS OF THE PARTIES
A. The Debtors' Motion for Summary Judgment
The Debtors argue that BONY cannot enforce the Note because the statute of limitations in O.R.C. § 1303.16(A) has expired.
BONY accelerated the Note after the Debtors defaulted. BONY filed the 2006 Foreclosure Action on December 20, 2006, alleging that the Note was in default as of August 1, 2006. (Jt. Stips. ¶ 3; Mot. for S.J., Ex. A.) Because acceleration is a condition precedent to filing a foreclosure action, the Debtors contend that the Note was accelerated, at the latest, as of December 20, 2006-i.e. , the date BONY filed the 2006 Foreclosure Action. The Debtors argue that the statute of limitations is six years, as set forth in O.R.C. § 1303.16(A), which provides:
[A]n action to enforce the obligation of a party to pay a note payable at a definite time shall be brought within six years after the due date or dates stated in the note or, if a due date is accelerated, within six years after the accelerated due date.
O.R.C. § 1303.16(A) (2018).
Because the statute of limitations to enforce an accelerated note is six years from the date of acceleration, the Debtors argue that December 20, 2012 was the last date BONY could enforce the accelerated Note. (Mot. for S.J. at 6.) The Debtors further argue that Claim 14 must be disallowed because BONY dismissed the 2006 Foreclosure Action without prejudice and did not refile a foreclosure action within the one-year "savings clause" period in O.R.C. § 2305.19.[8] BONY commenced the 2015 Foreclosure Action in April 2015-i.e. , more than two years after expiration of the six-year statute of limitations in O.R.C. § 1303.16(A). Thus, the Debtors contend that (i) BONY cannot enforce the Note; and (ii) the 2015 Foreclosure Action is time-barred.
The Debtors also argue that the default under the Note was never brought current in their 2007 Case. Moreover, the parties have stipulated that, at no time since the debt was accelerated (as of December 20, 2006) has the Note been simultaneously pre-petition and post-petition current. (Jt. Stips. ¶ 25.) As further support for the Note never being brought current, the Debtors point to the actions BONY took to *190 reinstate the 2006 Foreclosure Action approximately two months after they received their discharge in the 2007 Case.
The Debtors quote a portion of the Mortgage, which provides that, under certain circumstances, the Debtors had the right to reinstate the Note after it had been accelerated. The Debtors had the right to reinstate the accelerated Note by:
(a) pay[ing] Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cur[ing] any default of any other covenants or agreements; (c) pay[ing] all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument....
(Mortgage ¶ 19.) Because the Note was never brought current, the Debtors contend that (i) the Note, by its terms, could not have been reinstated; and (ii) the original default that led to the 2006 acceleration of the Note has never been cured.
Because the statute of limitations bars BONY from enforcing the Note, the Debtors argue that BONY is likewise prohibited from seeking to enforce the Mortgage, which is an incident to the Note. The Debtors state that BONY's only potential remedy is ejectment, which only concerns title to the property. (Mot. for S.J. at 6.) Thus, the Debtors reason that (i) BONY is barred by the statute of limitations from enforcing the Note; (ii) BONY is precluded from filing a foreclosure action to exercise its in rem remedies against the Debtors' Residence; and (iii) the Debtors have no personal liability on the Note as a result of their discharge in the 2007 Case. Consequently, the Debtors conclude that Claim 14 must be disallowed.
B. BONY's Response
BONY counters that the Motion for Summary Judgment should be denied for three reasons. First, BONY argues that, as a matter of law, a confirmed chapter 13 plan that provides for the cure of a pre-petition default and payment of a note de-accelerates a previously accelerated note. Because the Debtors' 2007 Case provided for the cure of the default and continued payment under the Note, BONY argues that the Note was de-accelerated. BONY represents that 11 U.S.C. § 1322(b)(5) permits a debtor to cure the default amount through a chapter 13 plan and reinstate the payment schedules of a home mortgage note, notwithstanding the pre-petition acceleration of the mortgage debt. BONY further states that "where the loan is de-accelerated, the statute of limitations stops until another acceleration letter is sent." (Resp. at 3 (citation omitted).)
Second, notwithstanding de-acceleration of the Note in the 2007 Case, BONY argues that the Note was independently de-accelerated in 2013 when it was reinstated. (Id. at 5.) In support of this argument, BONY states that it "sent a Letter [attached to the Response as Exhibit 1] stating that as of May 5, 2013, the debt was reinstated." (Id. at 6 (citation omitted).) According to BONY, the letter indicates that the outstanding balance was no longer the entire amount of the debt-which BONY argues would be the case if the Note was in an accelerated status-but rather was only $18,413.83 for past due payments. (Id. ) BONY argues that "[w]here the debt is de-accelerated under this provision of the U.C.C. [ O.R.C. § 1303.16(A) ], the statute of limitations stops until another acceleration letter is sent, where the limitations period runs from the new acceleration date." (Id. at 5 (citation omitted).)
*191 Third, BONY explains that, although often filed simultaneously, an action in Ohio to foreclose a mortgage is separate and distinct from an action to collect the balance due on a promissory note. BONY contends that Ohio law holds that the six-year limitations period in O.R.C. § 1303.16 applies only to personal collection of a negotiable instrument and not to an in rem action on a mortgage, which is covered by the statute of limitations for contracts in O.R.C. § 2305.06.[9] BONY postulates that, under the prevailing law in Ohio, even if collection on a note is time-barred under O.R.C. § 1303.16, enforcement of the mortgage is not. Thus, BONY concludes that, even if the last acceleration occurred in 2006, BONY is not time-barred under O.R.C. § 2305.06 from bringing an in rem action on the Mortgage; so Claim 14 is not time-barred. (Id. at 9.)
BONY finally argues that this Court should abstain from deciding this issue in order to avoid duplicative litigation, because (i) a central issue in the 2015 Foreclosure Action is whether the complaint is barred by the statute of limitations; and (ii) the 2015 Foreclosure Action was pending prior to the Debtors' filing this case.
C. The Debtors' Reply
In their Reply, the Debtors make an argument for imposition of judicial estoppel. Since the complaint in the 2006 Foreclosure Action was based on acceleration of the Note as of December 20, 2006, in seeking reinstatement of the 2006 Foreclosure Action, BONY represented to the State Court that the Note had been accelerated in 2006 and continued to be accelerated. The State Court relied on this representation in reinstating the 2006 Foreclosure Action to its active docket. Consequently, the Debtors assert that BONY is prohibited by judicial estoppel from taking a contrary position now regarding de-acceleration of the Note.
The Debtors also contend that the Note was not reinstated in May 2013. The Debtors reiterate their arguments that (i) the Note and Mortgage do not provide BONY with the unilateral right to reinstate the Note; and (ii) the Debtors never paid all sums and met all conditions precedent that would permit them to have the Note reinstated.
The Debtors further argue that BONY inaccurately represents the prevailing law in Ohio regarding the statute of limitations for enforcing a mortgage. Finally, the Debtors state that a decision by this Court that Claim 14 is barred by the statute of limitations will not result in inconsistent litigation because it will be res judicata on the issue.
IV. LEGAL ANALYSIS
A. BONY's Interest in the Mortgage Is Sufficient for Claim 14
The Court begins its analysis by examining the sufficiency of BONY's Claim 14. There is no dispute that the Debtors' personal liability on the Note was discharged in their 2007 Case, leaving BONY with recourse only against the Debtors' Residence, which is the security for the Mortgage. BONY's rights against the Debtors' Residence, however, are sufficient support for Claim 14.
[W]e have no trouble concluding that a mortgage interest that survives the discharge of a debtor's personal liability is a "claim" within the terms of § 101(5).
*192 Even after the debtor's personal obligations have been extinguished, the mortgage holder still retains a "right to payment" in the form of its right to the proceeds from the sale of the debtor's property. Alternatively, the creditor's surviving right to foreclose on the mortgage can be viewed as a "right to an equitable remedy" for the debtor's default on the underlying obligation. Either way, there can be no doubt that the surviving mortgage interest corresponds to an "enforceable obligation" of the debtor.
The Court of Appeals thus erred in concluding that the discharge of petitioner's personal liability on his promissory notes constituted the complete termination of the Bank's claim against petitioner. Rather, a bankruptcy discharge extinguishes only one mode of enforcing a claim-namely, an action against the debtor in personam -while leaving intact another-namely, an action against the debtor in rem .
* * *
The conclusion that a surviving mortgage interest is a "claim" under § 101(5) is consistent with other parts of the Code. Section 502(b)(1), for example, states that the bankruptcy court "shall determine the amount of [a disputed] claim ... and shall allow such claim in such amount, except to the extent that ... such claim is unenforceable against the debtor and property of the debtor " (emphasis added). In other words, the court must allow the claim if it is enforceable against either the debtor or his property. Thus, § 502(b)(1) contemplates circumstances in which a "claim," like the mortgage lien that passes through a Chapter 7 proceeding, may consist of nothing more than an obligation enforceable against the debtor's property. Similarly, § 102(2) establishes, as a "[r]ul[e] of construction," that the phrase " 'claim against the debtor' includes claim against property of the debtor." A fair reading of § 102(2) is that a creditor who, like the Bank in this case, has a claim enforceable only against the debtor's property nonetheless has a "claim against the debtor" for purposes of the Code.
Johnson v. Home State Bank , 501 U.S. 78, 84-85, 111 S.Ct. 2150, 115 L.Ed.2d 66 (1991).
Although BONY may assert a claim in this bankruptcy based solely on the Mortgage, Claim 14 is still subject to objection and disallowance on the grounds that BONY is barred by the statute of limitations from enforcing the Mortgage.
For example, § 502(b)(1) says that if a "claim" is "unenforceable" it will be disallowed, not that it is not a "claim." Other provisions make clear that the running of a limitations period constitutes an affirmative defense that a debtor is to assert after the creditor makes a "claim." §§ 502, 558.
Midland Funding, LLC v. Johnson , --- U.S. ----, 137 S.Ct. 1407, 1409, 197 L.Ed.2d 790 (2017) (citing 11 U.S.C. §§ 502, 558 ).
B. Enforcement of the Accelerated Note Is Barred
The parties have stipulated that BONY accelerated the Note as of December 20, 2006, at the latest.[10] (Jt. Stips. ¶ 2.) Furthermore, both parties agree and this Court finds that the statute of limitations *193 to enforce the accelerated Note is six years, as set forth in O.R.C. § 1303.16(A).[11]
1. De-acceleration Did Not Alter the Limitations Period
BONY argues that the statute of limitations was tolled by operation of law because the Note was de-accelerated when the Debtors filed their 2007 Case. BONY's argument conflates the concept of de-acceleration in bankruptcy with the statute of limitations being tolled. There is simply no support for this argument.
BONY cites to several cases for the proposition that a chapter 13 bankruptcy plan that provides for curing the arrearage and paying a note and mortgage de-accelerates the note. "Despite the entire balance on the loan having been accelerated, under the [2007 Case] plan, the [Debtors] were allowed to cure the arrearage and make current payments outside the plan, as is standard practice." (Resp. at 2.) BONY states, "In Morrison , the District Court noted that § 1322(b)(5) permitted Chapter 13 debtors to cure the default amount through the plan and 'reinstate the original payment schedules of their home mortgage notes, notwithstanding the acceleration of the mortgage debts prior to their filings for relief.' " (Id. at 4 (quoting In re Morrison , 35 B.R. 996, 999 (S.D. Ohio 1983) ).)
The analysis and holding in In re Morrison rely heavily on In re Taddeo , 685 F.2d 24 (2d Cir. 1982). At the time In re Taddeo was decided, the Bankruptcy Reform Act of 1978 was relatively new and courts were struggling with whether § 1322 applied when a mortgage had been accelerated and a foreclosure action was pending prior to the bankruptcy filing.[12] The creditor in Taddeo objected to confirmation of the chapter 13 plan on the bases that (i) the Bankruptcy Code did not override New York law; and (ii) under New York law, the debtor could not cure an accelerated mortgage debt without paying the full amount of the claim. In Taddeo , the Second Circuit held that a chapter 13 debtor could cure mortgage defaults and return to monthly payments despite a mortgagee's pre-bankruptcy acceleration of a mortgage debt. In doing so, the Second Circuit stated:
But we hold that the concept of "cure" in § 1322(b)(5) contains the power to de-accelerate. Therefore the application of that section de-accelerates the mortgage and returns it to its 15-year maturity. Alternatively, we hold that the ban on "modification" in § 1322(b)(2) does not limit the Taddeos' exercise of their curative powers under either § 1322(b)(3) or (b)(5). Therefore the Taddeos may first cure their default under (b)(3) and then maintain payments under (b)(5).
Id. at 28.
Section 1322(b) of the Bankruptcy Code provides a chapter 13 debtor with the opportunity to propose a plan that "provide[s] for curing or waiving of any default" and "maintenance of payments while the case is pending on any ... secured claim on which the last payment is due after the date on which the final payment under the plan is due[.]" 11 U.S.C. § 1322(b)(3), (b)(5) (2018). It appears that *194 the Second Circuit's use of "de-acceleration" simply means that pre-petition acceleration is ignored while the debtor pays the amounts necessary to cure and maintain the note and mortgage under a chapter 13 plan. In other words, the debtor does not have to make a lump sum payment to pay the entire amount of a mortgage debt, as accelerated, in order to cure the default in a chapter 13 plan.
Although bankruptcy courts refer to de-acceleration of a note and mortgage when § 1322 is utilized, that phrase is not defined or even mentioned in § 1322 or any other section of the Bankruptcy Code. Moreover, although Black's Law Dictionary defines an acceleration clause in a note, it does not define either "decelerate" or "de-accelerate."
More to the point, nothing in In re Morrison , In re Taddeo , or any other case cited by BONY states anything about tolling the statute of limitations during a chapter 13 case when a note has been de-accelerated by § 1322(b). In addition, nothing in the Bankruptcy Code provides for the tolling of a statute of limitations to enforce a note that has been accelerated prior to filing a bankruptcy petition. Instead, 11 U.S.C. § 108 specifically deals with the expiration and suspension of statutes of limitations during a bankruptcy case. Section 108(c) provides:
(c) Except as provided in section 524 of this title, if applicable nonbankruptcy law ... fixes a period for commencing or continuing a civil action in a court other than a bankruptcy court on a claim against the debtor ... and such period has not expired before the date of the filing of the petition, then such period does not expire until the later of-
(1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or
(2) 30 days after notice of the termination or expiration of the stay under section 362... of this title ... with respect to such claim.
11 U.S.C. § 108(c) (2018)[13] . Under § 108, the Ohio statute of limitations to enforce the accelerated Note expired on December 20, 2012.[14]
BONY argues, "Under a most conservative reading where the loan was re-accelerated the day after the [Debtors'] bankruptcy ended, and assuming the six year limitations period found in O.R.C. 1303.16 applied (which it does not), the deadline to seek collection on the debt would be in 2018." (Resp. at 5.) However, BONY does not cite to any contract provision or case law to support the argument that a note is re-accelerated when a debtor emerges from bankruptcy, thus starting a new limitations period. The Court finds no legal or factual support for the argument that there is a new cause of action for enforcement of a "re-accelerated" note when a debtor emerges from bankruptcy protection.
At the conclusion of the Debtors' 2007 Case, there were only two possible outcomes: (i) the Debtors were current under *195 the Note, in which case, the express terms of the Mortgage allowed the Debtors the right to reinstate the Note and Mortgage; or (ii) the Debtors were not current under the Note such that the remedies under the pre-petition acceleration applied-i.e. , BONY had the remaining time before expiration of the six-year statute of limitations to enforce the accelerated Note.
Based on the Debtors' failure to bring the Note current in the 2007 Case, BONY moved the State Court to reinstate the 2006 Foreclosure Action. The 2006 Foreclosure Action was premised on the 2006 acceleration of the Note-indeed, a required element of the foreclosure cause of action was that the Note had been accelerated. The State Court accepted BONY's representation and moved the 2006 Foreclosure Action to its active docket. BONY's conduct in seeking reinstatement of the 2006 Foreclosure Action is in direct contradiction to its argument now that the Note was re-accelerated with a new statute of limitations. If, as BONY now argues, the Note was re-accelerated when the Debtors' 2007 Case ended, BONY would have had to commence a new foreclosure action based upon the new acceleration date. This is not what BONY did. In stark contrast to its current re-acceleration argument, BONY's act to reinstate the 2006 Foreclosure Action was consistent with (i) the statute of limitations in O.R.C. § 1303.16(A) beginning to run in December 2006; and (ii) § 108 of the Bankruptcy Code.
As a consequence, this Court finds that BONY is judicially estopped[15] from arguing that the Note was re-accelerated with a new statute of limitations when the Debtors emerged from their 2007 Case.
Indeed, finding merit to BONY's argument that a note, after having been de-accelerated in a chapter 13 case by § 1322, is re-accelerated upon conclusion of that chapter 13 case with a new statute of limitations would stand current bankruptcy practice on its head. When a foreclosure action is pending at the time a bankruptcy petition is filed, mortgagees routinely move to lift the automatic stay to prosecute the pending foreclosure action. These mortgage holders do not seek stay relief to re-accelerate the note and file a new foreclosure action.
This Court finds that any "de-acceleration" of the Note by virtue of the Debtors' 2007 Case could not and did not toll the statute of limitations in O.R.C. § 1303.16(A).
2. The Note Was Never Reinstated
BONY argues that the statute of limitations has not expired because the Note was reinstated. In the context of a chapter 13 plan, de-acceleration is not the same as reinstatement of a note. "[D]eceleration of a previously accelerated loan and cure of arrearages in that obligation, when compelled by the provisions of a debtor's Chapter 13 plan, do not constitute a voluntary process of reinstatement." In re Seibel , 82 B.R. 463, 465 (Bankr. S.D. Ohio 1987). "[T]here are essential differences between a contractual mortgage reinstatement and the statutory cure right afforded by § 1322(b)(5) of the Bankruptcy code. The fundamental differences between these remedies compel rejection of Chase's contention that contractual mortgage reinstatement and mortgage reinstatement through a Chapter 13 plan are *196 one and the same." In re Tudor , 342 B.R. 540, 563 (Bankr. S.D. Ohio 2005).
Seeming to recognize that de-acceleration of the Note in the chapter 13 context is not the same as reinstatement of the Note, BONY argues that the Note was "independently de-accelerated in 2013" when the Note was reinstated. (Resp. at 5.) As set forth above, once the Note was accelerated, the Mortgage provided the Debtors with the right to reinstate the Note and Mortgage if they paid BONY all sums due under the Note as if it had not been accelerated plus all other fees incurred by BONY in enforcing the Note and Mortgage. (See Mortgage ¶ 19.) The parties have stipulated that the Debtors never paid BONY all sums required to reinstate the Note. Accordingly, the Debtors never had the contractual right to reinstate the Note.
In contrast to the Debtors' limited right to reinstate the Note, neither the Note nor the Mortgage provides BONY with the ability to unilaterally reinstate the previously accelerated Note. Thus, by the express terms of the Note and Mortgage, the accelerated Note was not reinstated. BONY's argument that the Note was reinstated in 2013 fails because (i) BONY has stipulated that the Note was never brought current-i.e ., the default that precipitated acceleration of the Note was never cured; and (ii) once the Note was accelerated, no term in either the Note or Mortgage permits BONY to unilaterally reinstate the Note. Consequently, the Court finds no legal or factual basis for BONY's assertion that the Note was reinstated in 2013 or at any other time.
BONY argues, "[U]nder Article 3 of the U.C.C. [O.R.C. § 1303, et seq. ], where the loan is de-accelerated, the statute of limitations stops until another acceleration letter is sent." (Resp. at 3-4 (citation, n.2 omitted).) BONY fails to point to the U.C.C. or Ohio Revised Code provision that stops the statute of limitations from running. Instead, for this proposition, BONY cites U.S. Bank, N.A. v. Cox , Case No. 67082, 2018 WL 660624, 2018 N.Y. Misc. LEXIS 292, 2018 N.Y. Slip Op. 30155(U) at *4 (Sup. Ct. N.Y., Jan. 24, 2018). The Cox case, however, does not so hold. In fact, the Cox case in no way deals with the effect of a bankruptcy filing on a previously accelerated note or any kind of de-acceleration of a note. Instead, the Supreme Court of New York, Westchester County cited to specific New York law that permitted a lender to revoke a prior acceleration.
It is well settled that once a mortgage debt is accelerated, the entire amount becomes due and the statute of limitations begins to run. However, under New York law, a mortgage lender may revoke its election to accelerate all sums due under an optional accelerations clause, provided that there is no change in the borrower's position in reliance thereon. A mortgage lender accomplishes the revocation by means of an affirmative act within the statute of limitations.
Id. at *3-4 (emphasis added). BONY cites to nothing in Ohio law or the Note that permitted BONY to revoke its prior acceleration of the Note. Even if, arguendo , Ohio law mirrors New York law regarding a lender's ability to revoke a prior acceleration (which BONY has not argued), BONY would have had to revoke the acceleration prior to expiration of the statute of limitations in December 2012. Here, (i) BONY offers no evidence that it ever revoked the 2006 acceleration of the Note; and (ii) the statute of limitations ended on December 20, 2012, whereas BONY asserts that the Note and Mortgage were reinstated in May 2013,[16] several months *197 outside the statute of limitations. Simply put, the Cox case does not support BONY's position and is inapposite to the facts before this Court.
Nor has BONY shown that the Debtors and BONY agreed to reinstate the Note. Without such an agreement, the Note could not have been reinstated. "Once a loan is accelerated and the entire amount is due, absent agreement of the parties, the outstanding balance remains due." Fed. Nat'l Mortgage Ass'n v. Herren , 2017-Ohio-8401, ¶ 40, 99 N.E.3d 1071 (Ohio Ct. App. 8th Dist. 2017). Thus, the Court finds no merit to BONY's argument that the Note was reinstated.
Consequently, this Court finds that the statute of limitations in O.R.C. § 1303.16(A) to enforce the accelerated Note was never tolled by either (i) operation of law when the Debtors filed their 2007 Case and the Note was de-accelerated; or (ii) by reinstatement of the Note.
C. Statute of Limitations for Enforcement of the Mortgage
1. Foreclosure on the Mortgage
Since, by virtue of the Debtors' discharge in the 2007 Case BONY is enjoined from seeking to collect on the Note from the Debtors, one may wonder why the parties devoted so much time to the issue of whether enforcement of the accelerated Note was barred by the statute of limitations. The reason for this is a fundamental disagreement between the parties concerning what statute of limitations applies if BONY seeks only to enforce its in rem rights under the Mortgage. The Debtors contend that the Mortgage is an incident to the Note and, once the statute of limitations in O.R.C. § 1303.16(A) has expired, BONY is also barred from seeking foreclosure under the Mortgage. BONY, on the other hand, argues that its right to enforce the Mortgage is a separate and distinct cause of action, which has a longer statute of limitations in O.R.C. § 2305.06 that has not expired.
In Deutsche Bank Nat'l Trust Co. v. Holden , 147 Ohio St. 3d 85, 60 N.E.3d 1243 (Ohio 2016), the Ohio Supreme Court considered whether a party filing a foreclosure action is required to establish ownership of both the note and mortgage to have standing to commence the action. The debtors received a chapter 7 bankruptcy discharge at an unspecified time after August 2009. Deutsche Bank filed a foreclosure action on August 12, 2011, from which the appeal arose. The trial court granted summary judgment in favor of Deutsche Bank, holding that it was the holder of the note and mortgage prior to the commencement of the foreclosure action and, thus, had standing to foreclose upon the mortgage. The court of appeals reversed on the grounds that foreclosure could be brought only by the current holder of both the note and mortgage and found a genuine issue of material fact regarding whether Deutsche Bank owned the note when it commenced the action.
The Ohio Supreme Court held that there was no issue of fact that Deutsche Bank held the mortgage and, thus, had standing to foreclose on the property. The court recognized three remedies that a mortgagee could exercise in the event a mortgagor defaulted on the obligations under a note: (i) seek a personal judgment against the mortgagor to recover the amount due on the promissory note, without resort to the mortgaged property; (ii) bring an action to enforce the mortgage, which is for the exclusive benefit of the mortgagee-i.e. , ejectment; or (iii) bring a foreclosure action to cut off the mortgagor's right of redemption, determine the existence and extent of the mortgage lien, and have the mortgaged property sold for its satisfaction.
*198 The court further held that these were distinct causes of action and stated:
Based on the distinction between these causes of action-i.e ., one is an action on a contract, while the other is an action to enforce a property interest created by the mortgage-we have explained that "the bar of the note or other instrument secured by mortgage does not necessarily bar an action on the mortgage." Kerr v. Lydecker , 51 Ohio St. 240, 253, 37 N.E. 267 (1894) ; accord Bradfield [v. Hale , 67 Ohio St. 316,] 325, 65 N.E. 1008 [ (Ohio 1902) ] (holding that an action for ejectment can be maintained after the statute of limitations on the note has expired); Simon [v. Union Trust Co. ], 126 Ohio St. [346,] 350, 185 N.E. 425 [ (Ohio 1933) ] ("For the purpose of subjecting the land to the payment of the mortgage debt, no personal judgment was ever necessary").
Id. at 91, 60 N.E.3d 1243 (emphasis added).
The Ohio Supreme Court, however, did not address the applicable statute of limitations for any of the separate actions discussed. Because the foreclosure action in Holden was brought well within the six-year statute of limitations in O.R.C. § 1303.16(A), there can be no inference that the Ohio Supreme Court meant for a longer statute of limitations to apply to foreclosures on a mortgage.
Here, the Debtors and BONY greatly differ in their interpretations of Holden and what that case means regarding the applicable statute of limitations to enforce a mortgage.
The Debtors argue that the six-year statute of limitations to enforce the Note controls the cause of action to enforce the Mortgage. In making this argument, the Debtors rely on well-settled law in Ohio. See Kernohan v. Manss , 53 Ohio St. 118, 134, 41 N.E. 258 (Ohio 1895) ("Where a promissory note is secured by mortgage, the note, not the mortgage, represents the debt. The mortgage is, therefore, a mere incident...."); Kerr v. Lydecker , 51 Ohio St. 240, 254-55, 37 N.E. 267 (Ohio 1894) ("[W]hen a note is secured by the mortgage, the statute of limitations as to both is the same, and therefore the mortgage will be available as a security to the note in an action for foreclosure and sale until the note shall be either paid or barred by the statute; but in such case an action for foreclosure and sale cannot be maintained on the mortgage after an action on the note shall be barred by the statute of limitations."); Hopkins v. Clyde , 71 Ohio St. 141, 149, 72 N.E. 846 (Ohio 1904) ("Again, when the note is barred, the mortgage is also barred, and a grantee of the mortgagor may interpose this defense to an action to foreclose the mortgage whether the mortgagor does or does not."); Bruml v. Herold , 14 Ohio Supp. 123, 125 (Ohio C.P. Geauga Cty. June 29, 1944) ("The note being barred by the operation of the statute of limitations, the mortgage securing the same is relieved and discharged, the same as though the note had been paid during its lifetime in full[.]").
In contrast, BONY insists that the unexpired statute of limitations in O.R.C. § 2305.06 controls the separate cause of action to foreclose upon the mortgage. BONY cites several cases for the proposition that foreclosure on the mortgage is a separate cause of action, but none of these cases state what statute of limitations controls a mortgage foreclosure action. BONY concedes, "In most instances, R.C. 1303.16 ( U.C.C. 3-118 ) governs the statute of limitations for promissory notes." (Resp. at 8.) BONY states, however, that since it is not seeking a party to pay the Note, *199 O.R.C. § 1303.16(A) does not apply to the 2015 Foreclosure Action.
BONY contends, "The prevailing law in Ohio is that where collection on a note may be time-barred under R.C. 1303.16, enforcement of the mortgage is not." (Id. ) The most recent case cited by BONY that addresses this issue is Bank of New York Mellon v. Walker , 2017-Ohio-535, 78 N.E.3d 930 (Ohio Ct. App. 8th Dist. 2017). In Walker , the mortgagee filed a foreclosure action in 2013 based on a 2004 default on a promissory note. Walker moved for summary judgment on the ground that enforcement of the note was barred by the six-year statute of limitations in O.R.C. § 1303.16(A). Relying on Holden , the trial court granted summary judgment to the mortgagee. The Eighth District Court of Appeals held that the mortgagee was barred from obtaining a judgment on the note, but held that the mortgage still provided the bank with relief because it could foreclose on the mortgage. The court of appeals held:
Here, as in Holden , if the statute of limitations bars recovery on the note, Bank of New York is a party entitled to enforce the note, but cannot obtain a judgment on it. Bank of New York is in the same position as Deutsche Bank in Holden . Holden makes clear that there are separate remedies attendant to the mortgage, which means the mortgage is no longer a mere incident to the note.
This court is hesitant to extend Holden beyond the bankruptcy context, but there is no language in the opinion that would strictly limit the available remedies beyond the context addressed there.
* * *
Therefore, Bank of New York, if unable to enforce the note due to the expiration of the statute of limitations, is still entitled to enforce the mortgage under the longer, unexpired period for a specialty set forth in former R.C. 2305.04.
Id. at 938.
BONY also cites U.S. Bank N.A. v. Robinson , 2017-Ohio-5585, 2017 WL 2817596 (Ohio Ct. App. 8th Dist. 2017), in which the Eighth District Court of Appeals cited to its own Walker opinion for the proposition that:
As a matter of law, R.C. 1303.16(A) does not apply to actions to enforce the mortgage lien on the property after the payment on the note becomes unenforceable through the running of the statute of limitations. R.C. 1303.16(A) only applies to prohibit a party from enforcing obligations to pay on the note, an obligation Terrence has not been burdened with since mid-2008 when the accelerated debt was discharged in bankruptcy.
* * *
Importantly for the purposes of the current appeal, the [ Walker ] panel concluded that R.C. 1303.16(A) does not apply to equitable actions on mortgages.
Id. ¶¶ 11-12.
Based on the cases cited by BONY, the "prevailing law in Ohio" on the applicability of the longer statute of limitations to the enforcement of mortgages appears to be only in the Eighth District Court of Appeals. BONY cites to no other Ohio decisions on this issue. In Bank of New York Mellon v. DiPizzo , 2015-Ohio-4026, 42 N.E.3d 1218 (Ohio Ct. App. 11th Dist. 2015), which was cited by the parties, the Eleventh District Court of Appeals declined to consider the applicability of the six-year statute of limitations in O.R.C § 1303.16(A) to the enforcement of mortgages because the issue had not been raised below.
Significantly, the Ohio Supreme Court in Holden did not overturn or annul the well-settled law in Ohio that the same statute of limitations governs enforcement of a note *200 and a mortgage.[17] Indeed, not only did the Ohio Supreme Court not overrule Kerr v. Lydecker , 51 Ohio St. 240, 37 N.E. 267 (Ohio 1894), the court cited that case favorably. The Ohio Supreme Court held in Kerr that:
[W]hen a note is secured by the mortgage, the statute of limitations as to both is the same, and therefore the mortgage will be available as a security to the note in an action for foreclosure and sale until the note shall be either paid or barred by the statute; but in such case an action for foreclosure and sale cannot be maintained on the mortgage after an action on the note shall be barred by the statute of limitations.
Id. at 254-55, 37 N.E. 267 (emphasis added). The following reference in Holden referred to an action for ejectment that is covered by a 21-year statute of limitations: "the bar of the note or other instrument secured by mortgage does not necessarily bar an action on the mortgage." Deutsche Bank Nat'l Trust Co. v. Holden , 147 Ohio St. 3d 85, 60 N.E.3d 1243 (Ohio 2016) (quoting Kerr , 51 Ohio St. at 253, 37 N.E. 267 ).
The Ohio Supreme Court has not specifically ruled on the applicable statute of limitations for in rem foreclosure actions upon a mortgage. Despite the interpretation of Holden by the Eighth District Court of Appeals, the Ohio Supreme Court never addressed the applicable statute of limitations in that case. In rendering the Holden decision, the Ohio Supreme Court cited the continued viability of Kerr , which held that the statute of limitations for enforcing a note and mortgage were one and the same. Accordingly, this Court finds that BONY is barred by the six-year statute of limitations in O.R.C. § 1303.16(A) from foreclosing upon the Mortgage.
2. Ejectment
One final issue must be addressed even though it has not been discussed by either party: is an action in ejectment available to BONY and, if so, how does that affect the statute of limitations argument? The Debtors expressly acknowledge that, even if BONY cannot bring a foreclosure action upon the Mortgage, the Mortgage may still be the basis for an ejectment action. "The only potential remedy [BONY] has is ejectment, which is an issue with regard to title of the property and no longer as security for the debt." (Mot. for S.J. at 6.)
A cause of action for ejectment in Ohio is governed by O.R.C § 5303.03.
R.C. 5303.03 is a statutory action that is a substitute for the common law action of ejectment and can be maintained by one claiming the right to possession of land in the possession of another. An ejectment action is a possessory action at law. Historically, the sole form of relief available to a plaintiff in an ejectment action was possession of his or her land and damages (reasonable rental value of the withheld land).
McGuire v. Kashen , Case No. L-94-294, 1995 Ohio App. LEXIS 4007 at *9, 1995 WL 547781 at *3 (Ohio 6th Dist. Ct. App. Sept. 15, 1995) (internal citations omitted).
Black's Law Dictionary states, "The essential allegations in an action for ejectment are that (1) the plaintiff has title to the land, (2) the plaintiff has been wrongfully dispossessed or ousted, and (3) the plaintiff has suffered damages[.]" BLACK'S LAW DICTIONARY 630 (10th ed. 2014). Based upon the Ohio statute and this definition, it *201 appears BONY would need to hold legal title and be entitled to possession of the Debtors' Residence in order to maintain a cause of action for ejectment. Holding a mortgage on the Debtors' Residence is not the same as holding legal title to the property. Accordingly, it is difficult for this Court to see how BONY has a potential cause of action against the Debtors for ejectment.
As set forth above, except for the Debtors' statement that this potential remedy is available to BONY, neither party has addressed whether and/or how ejectment as a cause of action may be the basis for allowance of Claim 14.
Case law indicates that an action in ejectment is governed by the 21-year statute of limitations in O.R.C. § 2305.04. Because BONY would not be barred by the statute of limitations from bringing an action for ejectment, it is possible that Claim 14 is not barred in its entirety by the statute of limitations. The Court will withhold ruling on the potential ejectment argument until it is fully developed.
D. There Is No Danger of Inconsistent Rulings
The final issue raised by BONY is the possibility of inconsistent judicial rulings if this Court rules on the Motion for Summary Judgment. BONY argues that it filed the 2015 Foreclosure Action on April 9, 2015. Nearly two years later, on March 15, 2017, the 2015 Foreclosure Action was stayed by the Debtors' present bankruptcy filing. BONY states, "A central issue in the 2015 Foreclosure is whether the complaint is barred by the statute of limitations." (Resp. at 11.) BONY argues that "a finding by [this Court] that [Claim 14] is time-barred under O.R.C. 1303.16 could result in inconsistent rulings between this Court and the state court." (Id .)
Section 502(a) of the Bankruptcy Code states, "A claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest ... objects." 11 U.S.C. § 502(a) (2018). Pursuant to § 502(b), this Court is required to resolve objections to claim, and a claim shall be disallowed if the claim is "unenforceable." 11 U.S.C. § 502(b)(1). Here, the Debtors have objected to Claim 14, asserting that the debt is unenforceable because the statute of limitations has expired. Section 558 of the Bankruptcy Code authorizes the Debtors to assert the statute of limitations as a defense to Claim 14.[18] Thus, this Court is required to rule on the Claim Objection because only allowed claims may be paid through the Debtors' chapter 13 plan.
Notwithstanding that this Court is required to rule on the Claim Objection so that this bankruptcy case can be administered, BONY states, "When an issue brought before a federal court is already pending before a state court, there are circumstances in which abstention by the federal court is appropriate." (Resp. at 11.) BONY's entire argument about inconsistent rulings rests on the fact that the 2015 Foreclosure Action was filed prior to the Claim Objection. The Court finds BONY's argument to be disingenuous.
The 2015 Foreclosure Action was pending for two years without the "central issue" of the statute of limitations being addressed. Significantly, in the time since the filing of this bankruptcy case, BONY has not sought to have the automatic stay lifted so the State Court could adjudicate the statute of limitations issue. Apparently, BONY is content to have the issue regarding *202 the statute of limitations remain unresolved indefinitely.
Most astounding is BONY's audacity in raising this abstention argument. Incredibly, after (i) asking this Court to set an evidentiary hearing to resolve the Claim Objection; and (ii) having not opposed the Debtors' request to file a motion for summary judgment on the statute of limitations issue, for the first time in response to the motion, BONY now takes the position that this Court should abstain. This case does not present the kind of circumstances where abstention is appropriate.
It is black letter law that any ruling by this Court on the statute of limitations issue will be res judicata to the extent the State Court has the same parties and the same issue before it. Thus, there can be no danger of "inconsistent rulings."
V. CONCLUSION
For the reasons set forth above, the Court will (i) grant the Motion for Summary Judgment in part, finding that enforcement of the Note and foreclosure upon the Mortgage are both governed by the six-year statute of limitations in O.R.C. § 1303.16(A) and are time-barred; and (ii) deny the Motion for Summary Judgment in part, finding that the Mortgage may support an action for ejectment, which is covered by the statute of limitations in O.R.C. § 2305.04 and which would not be time-barred. However, because the issue of ejectment has not been fully briefed, the Court makes no finding that Claim 14 encompasses a potential cause of action for ejectment or that a cause of action for ejectment supports allowance of Claim 14.
ORDER (i) GRANTING, IN PART, MOTION FOR SUMMARY JUDGMENT; AND (ii) DENYING, IN PART, MOTION FOR SUMMARY JUDGMENT
This cause is before the Court on Motion for Summary Judgment on Objection to Proof of Claim No. 14-1 ("Motion for Summary Judgment") (Doc. 62) filed by Debtors Arthur L. Fisher, Sr. and Pamela L. Fisher on March 8, 2018. The Debtors ask the Court to disallow Claim 14[1] because the underlying claim is barred by the six-year statute of limitation in Ohio Revised Code § 1303.16(A). On March 22, 2018, The Bank of New York Mellon Trust Company, National Association fka The Bank of New York Trust Company, N.A. as successor to JPMorgan Chase Bank, as Trustee for Residential Asset Securities Corporation, Home Equity Mortgage Asset-Backed Pass Through Certificates Series 2002-KS6 filed Opposition of Bank of New York Company as Trustee to Debtor's [sic] Motion for Summary Judgment on Objection to Proof of Claim No 14-1 (Doc. 62). On March 29, 2018, the Debtors filed Reply in Support of Debtors' Motion for Summary Judgment on Objection to Proof of Claim No. 14-1 (Doc. 72).
For the reasons set forth in the Court's Memorandum Opinion Regarding Debtors' Motion for Summary Judgment on Objection to Proof of Claim No. 14-1 entered on this date, the Court hereby (i) grants the Motion for Summary Judgment in part, finding that enforcement of the Note and Mortgage are both governed by the statute of limitations in O.R.C. § 1303.16(A) and are time-barred; and (ii) denies the Motion for Summary Judgment in part, finding that the Mortgage may support an action for ejectment, which is covered by *203 the statute of limitations in O.R.C. § 2305.04 and would not be time-barred. However, because the issue of ejectment has not been fully briefed, the Court makes no finding that Claim 14 encompasses a potential cause of action for ejectment.
INSTRUCTIONS TO CLERK
Please serve a copy of the foregoing upon the following via regular mail:
1. Specialized Loan Servicing LLC
8742 Lucent Blvd., Suite 300
Highlands Ranch, Colorado 80129
2. U.S. Bank, N.A., as Trustee of the NRZ Pass-Through Trust X
P.O. Box 5229
Cincinnati, OH 45201-5229

Attached to Claim 14 are copies of (i) Adjustable Rate Note dated August 7, 2002 ("Note") in the amount of $73,600.00, between Aegis Mortgage Corporation d/b/a UC Lending as the lender and Pamela L. Fisher and Arthur Fisher as the borrower; and (ii) Mortgage for real property located at 1804 Lucretia Drive, Girard, Ohio 44420, which is listed by the Debtors on their bankruptcy petitions as their residence ("Residence"). In addition to being attached to Claim 14, the Note and Mortgage are attached to the Motion for Summary Judgment as Exhibit A. The Court will simply reference sections and/or pages of the Note and Mortgage without citing to either Claim 14 or Exhibit A. Moreover, in certain instances, the parties each refer to the debt that is represented by the Note, but the Court will refer to such debt as the Note.

All facts regarding the 2007 Case that are not in the Joint Stipulations are taken from the case docket for Case No. 07-40993. The Court takes judicial notice of these facts from Case No. 07-40993.

Because BONY had not sought or received relief from the automatic stay in 11 U.S.C. § 362, the Foreclosure Judgment was void ab initio .

Although BONY knew or should have known that the Foreclosure Judgment was void ab initio because it was entered by the State Court when the automatic stay protected the Debtors and their property, BONY nonetheless sought and obtained an order from the State Court to have the sheriff sell the Debtors' Residence based on that Foreclosure Judgment.

On March 30, 2018, the Debtors filed Motion to Amend Debtors' Objection to Claim No. 14 (Doc. 74), which the Court granted (see Doc. 75). The Debtors filed Amended Objection to Claim Number 14-1 (Doc. 78) on April 5, 2018. This Memorandum Opinion does not consider any new facts alleged in the amended claim objection, which do not appear to impact the limited issue before the Court regarding the statute of limitations.

O.R.C. § 2305.19 states, in pertinent part:
(A) In any action that is commenced ..., if ... the plaintiff fails otherwise than upon the merits, the plaintiff ... may commence a new action within one year after the date of ... the plaintiff's failure otherwise than upon the merits or within the period of the original applicable statute of limitations, whichever occurs later.
O.R.C. § 2305.19(A) (2018).

At the time BONY accelerated the Note in 2006, the statute of limitations for written contracts in O.R.C. § 2305.06 was 15 years. This period was shortened to eight years on September 28, 2012. BONY contends that the limitations period had not expired in either instance.

The Note expressly permitted, but did not require BONY to accelerate the Note if the Debtors defaulted on their obligations under the Note. The parties have stipulated that BONY did, in fact, accelerate the Note no later than December 20, 2006 when it filed the 2006 Foreclosure Action.

However, BONY argues that the statute of limitations at issue is set forth in O.R.C. § 2305.06 regarding an in rem action based on the Mortgage. See infra at ----.

The creditor in Taddeo argued that § 1322(b)(5) applied only to claims whose last payment was due after the last payment under the plan was due. Because she had accelerated the mortgage, the creditor argued that all payments were due when the debtors filed their bankruptcy petition. The Second Circuit expressly overruled this argument.

BONY has not argued that the statute of limitations was suspended, as referenced in § 108(c)(1). Most of the cases dealing with suspension of the statute of limitations concern claims filed by the Internal Revenue Service, where § 108 has been construed in conjunction with 26 U.S.C. § 6503.

The Note was accelerated at the latest on December 20, 2006, making December 20, 2012 the last day to enforce the Note. Because expiration of the statute of limitations was more than 30 days after the automatic stay terminated on September 12, 2012 (when the Debtors received their discharge), the time period for BONY to enforce the Note expired on December 20, 2012.

Judicial estoppel is defined as "[e]stoppel that prevents a party from contradicting previous declarations made during the same or an earlier proceeding if the change in position would adversely affect the proceeding or constitute a fraud on the court." Black's Law Dictionary 668 (10th ed. 2014).

BONY claims that it "de-accelerated the debt on its own in 2013[.]" (Resp. at 6.)

Kerr was decided long before the U.C.C. was conceived, so enforcement of the foreclosure on a note and mortgage was covered by Ohio's 15-year statute of limitations in former O.R.C. § 2305.04. O.R.C. § 1303.16 was not enacted until August 1994.

"The estate shall have the benefit of any defense available to the debtor as against any entity other than the estate, including statutes of limitation...." 11 U.S.C. § 558 (2018).

All capitalized terms not defined herein are defined in the Court's Memorandum Opinion Regarding Debtors' Motion for Summary Judgment on Objection to Proof of Claim No. 14-1 entered on this date.